IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
May 13, 2015 Session

## MICHELLE BENSON SMITH v. CHRISTOPHER D. SMITH

**Direct Appeal from the General Sessions Court for Hardin County**
**No. 7717      Daniel L. Smith, Judge**

---

**No. W2013-02095-COA-R3-CV – Filed June 30, 2015**

---

This appeal arises from a divorce proceeding. The trial court designated the mother as primary residential parent of the parties' young son in its temporary and permanent parenting plans. After a subsequent hearing, the trial court found the mother in criminal contempt of the permanent parenting plan for failing to engage in joint decision-making with Father on certain issues. The trial court fined the mother fifty dollars and ordered both parties to pay their own attorney's fees. The father appeals, raising various issues regarding the parenting plans and the contempt proceedings. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the General Sessions Court Affirmed and Remanded**

BRANDON O. GIBSON, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and KENNY ARMSTRONG, J., joined.

Rachel Emily Putnam[1] and Austin Taylor Rainey, Memphis, Tennessee, for the appellant, Christopher D. Smith.

Terry Lynn Wood, Adamsville, Tennessee, for the appellee, Michelle Benson Smith.

### MEMORANDUM OPINION[2]

---

[1]Rachel Putnam replaced the late Curtis F. Hopper, who was the attorney of record for Father during much of the trial court proceedings.

[2]Tennessee Court of Appeals Rule 10 provides:

> This Court, with the concurrence of all judges participating in the case, may affirm, reverse, or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

# I. FACTS & PROCEDURAL HISTORY

Christopher D. Smith ("Father") and Michelle Benson Smith ("Mother") married in July 2007. The parties adopted a son ("the Child"), who was born in July 2009. The parties resided in Savannah, Tennessee. In October 2011, Mother left the marital home with the two-year-old Child and temporarily moved in with her mother in Florence, Alabama.

On October 18, 2011, Mother filed a complaint for divorce in the general sessions court of Hardin County, Tennessee. The divorce complaint listed Father's address in Savannah, Tennessee, and Mother's address in Florence, Alabama. In her complaint, Mother sought to be designated primary residential parent of the Child "immediately" and asked the court to hold a hearing on parenting time and child support "immediately." Along with her divorce complaint, Mother submitted an "Affidavit for Temporary Parenting Plan," which stated that she and the Child had been living with the Child's grandmother in Florence, Alabama, for two weeks. The "Affidavit for Temporary Parenting Plan" was a pre-printed form with specific questions regarding the Child. It asked, "Will the children be removed from the State of Tennessee? If yes, please explain." The answer provided by Mother was "Yes . . . Mother lives in Alabama."

On the same date as the filing of the divorce complaint and the "Affidavit for Temporary Parenting Plan," a "Notice of Temporary Injunctions" was entered to notify the parties of temporary injunctions in effect during the pendency of the divorce proceedings in accordance with Tennessee Code Annotated section 36-4-106(d).[3] According to the Notice, "effective at the time and date of the filing of the Complaint for Divorce," both parties were enjoined and restrained "[f]rom relocating any child(ren) of

---

[3]Tennessee Code Annotated section 36-4-106(d) provides:

> Upon the filing of a petition for divorce or legal separation, and upon personal service of the complaint and summons on the respondent or upon waiver and acceptance of service by the respondent, the following temporary injunctions shall be in effect against both parties until the final decree of divorce or order of legal separation is entered, the petition is dismissed, the parties reach agreement, or until the court modifies or dissolves the injunction, written notice of which shall be served with the complaint . . . .

The statute lists numerous injunctions addressing various issues, including parental relocation with the child. *See* Tenn. Code Ann. § 36-4-106(d)(1)-(5). The provisions of the injunctions "shall be attached to the summons and the complaint and shall be served with the complaint," and they "become an order of the court upon fulfillment of the requirements of this subsection (d)." Tenn. Code Ann. § 36-4-106(d)(6). However, the statute does not preclude "either party from applying to the court for further temporary orders, an expanded temporary injunction, or modification or revocation of this temporary injunction." *Id.*

the parties outside the State of Tennessee, or more than one hundred (100) miles from the marital home, without the permission of the other party or an order of the Court."

Two days later, on October 20, 2011, the trial court entered an ex parte "Temporary Parenting Plan," designating Mother as the Child's primary residential parent and granting Father parenting time every other weekend from Friday at 6 p.m. to Sunday at 6 p.m. When the ex parte temporary parenting plan was entered, Father had not yet been served with the divorce complaint or the related filings, and he apparently had no notice of the proceedings. Father was served with the divorce complaint and related documents a few weeks later, on November 12, 2011. He filed an answer and counter-complaint for divorce on November 22, 2011. That same date, he filed a motion to set aside the ex parte temporary parenting plan entered by the court, along with a proposed parenting plan of his own, which designated him as primary residential parent. Father asserted that the ex parte temporary parenting plan was entered by the court "without any due process rights to [Father]." He also alleged that Mother's move to Alabama caused an extreme disruption in the Child's daily life.

The trial court held a hearing regarding the temporary parenting plan on December 9, 2011. Mother and Father testified. The evidence presented indicated that Mother and Father were both residing near the Tennessee-Alabama state line, approximately twenty miles apart. Father was working in Mississippi four days per week from 6 a.m. to 4:30 p.m. Mother was unemployed. After hearing the testimony, the trial judge announced that he intended to continue the provisions of its previous order, except that Father would have additional parenting time with the Child every Friday from 1 p.m. to 6 p.m. On December 29, 2011, the trial court entered an "Amended Temporary Parenting Plan" that "confirmed" but also "amended" the ex parte temporary parenting plan by providing the additional parenting time for Father on Friday afternoons.

On August 20, 2012, Father filed a petition for contempt alleging that Mother had "blatantly disregarded" the orders of the court by moving the Child from Tennessee to Alabama, enrolling him in preschool there, and allowing her paramour to move into her residence. Father claimed that Mother's move to Alabama violated the temporary injunctions entered on the date the divorce complaint was filed.

The parties participated in mediation and reached an agreement as to all issues except those involving the Child. On August 27, 2012, the trial court entered a divorce decree declaring the parties divorced on stipulated grounds, dividing the marital property, and providing that all issues pertaining to the parties' son would be heard as soon as possible. The trial court held a hearing on the parenting issues on March 18, 2013. During opening statements, Mother's attorney mentioned the "Notice of Hearing" filed by Father's attorney, which indicated that both parties would present their proposed

parenting plans to the court at the hearing. Father's attorney then suggested that his August 2012 petition for contempt regarding Mother's relocation was "also on the table" for the court to resolve. Mother's attorney claimed he had no notice that the contempt petition would be heard, as the notice of hearing failed to mention the issue of contempt. The trial judge ruled that he would only consider the issues involving the proposed parenting plans that day, and if the contempt petition was still pending, he would "take that up at a later date" if necessary. Father's counsel then suggested that the contempt issues would be relevant to the trial court's analysis when designating a primary residential parent. The judge responded,

> The Court is going to make the ruling that we're going to hear the issues involving permanent plan, residential parent, issues involving [the] child except for the contempt and we -- you can bring those issues up. You won't be able to object to those as that would be relevant to who may be the residential parent involved in those issues there, including taking somebody out of the jurisdiction without the consent.
>
> Those are all issues that would be relevant toward [the] parenting plan, but I'm not going to make the ruling as far as contempt today. I'll let you-all bring those back if you wish to do so.

The proceedings continued without further argument regarding this issue.

At the time of the hearing, both Mother and Father had recently remarried, and Father had relocated from Savannah to Covington, Tennessee. The trial court heard testimony from Mother, Father, and Father's new wife. At the conclusion of the testimony, the trial court took the matter under advisement. On May 31, 2013, the trial court entered a written "Opinion" on the parenting issues. After a thorough discussion of the relevant best interest factors, the trial court designated Mother as primary residential parent and adopted her proposed permanent parenting plan with some slight modifications.

Father subsequently retained a different attorney and, on July 1, 2013, filed a motion to amend or for additional findings or for new trial. Father argued in his motion that because the trial court did not consider the contempt issues during the March 18 hearing, there was no proof presented regarding Mother's ongoing violations of court orders. Specifically, Father asserted that Mother's willful violation of court orders impacted the Child's educational and medical needs and overall well-being and was relevant to the Child's best interest. Father claimed that this "critical information" should have been considered in the best interest analysis but was not presented due to the trial court's ruling regarding the contempt matters. Father asked the trial court to conduct an

additional hearing to consider his petition for contempt, to determine whether Mother violated court orders, and to then make additional findings regarding the Child's best interest.

Shortly thereafter, on July 3, 2013, the trial court entered a "Judgment" confirming the rulings in its written "Opinion." The trial court entered a permanent parenting plan designating Mother as primary residential parent and awarding Father parenting time every other weekend. Father was ordered to pay child support, and each party was ordered to pay his or her attorney's fees. Father prematurely filed a notice of appeal.

After a hearing, the trial court entered an order denying Father's motion to amend or for additional findings or for new trial. The court ordered the parties to set the pending motion for contempt for a hearing within ninety days. Father then filed an amended petition for contempt on December 2, 2013. The amended petition incorporated by reference the allegations in the original petition, regarding Mother's relocation, and it also alleged that Mother was in violation of the permanent parenting plan, entered July 3, 2013. Specifically, the amended petition alleged that Mother failed to engage in joint decision-making or notify Father regarding numerous decisions involving the Child's preschool and therapy classes related to his autism. Father sought an order holding Mother in criminal contempt for these violations and ordering her incarceration, "as well as removing the minor child from her custody and placing him with Father." In addition, Father sought an award of attorney's fees incurred in connection with his petition for contempt.

The trial court held a hearing on the criminal contempt petition on January 31, 2014. Father and Mother testified. At the conclusion of Father's proof, Mother orally moved "for judgment of acquittal" on the basis that Father had not proven the allegations against her beyond a reasonable doubt. The trial court granted the motion only as to the allegations pertaining to Mother's relocation to Alabama, finding that Father failed to prove that she was in willful contempt as to that issue. The proceedings continued with additional testimony regarding the other allegations. The trial court ultimately found Mother in criminal contempt for willfully failing to discuss several major decisions with Father. However, the court found that Mother's contempt was "mitigated" by the high level of animosity between the parties. As a result, the court declined to incarcerate Mother and instead ordered her to pay a $50 fine. The court also declined to award attorney's fees to Father. On appeal, Father raises several issues regarding the contempt proceedings and the parenting plans entered by the trial court.

## II. ISSUES PRESENTED

Father presents the following issues, which we have slightly restated, for review:

1.  Did the trial court err by entering a temporary parenting plan ex parte and subsequently entering a similar permanent parenting plan designating Mother as primary residential parent;

2.  Did the trial court err by failing to consider Father's petition and amended petition for contempt prior to entering its judgment and permanent parenting plan;

3.  Did the trial court err by denying Father's motion for additional findings of fact or for a new trial;

4.  Did the trial court err by failing to find Mother in contempt for moving the child outside the State of Tennessee in violation of court orders; and

5.  Did the trial court err by failing to award Father attorney's fees incurred in connection with his filing of the petitions for contempt.

For the following reasons, we affirm the decision of the trial court and remand for further proceedings.

## III. STANDARD OF REVIEW

"In a non-jury case such as this one, appellate courts review the trial court's factual findings de novo upon the record, accompanied by a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise." *Kelly v. Kelly*, 445 S.W.3d 685, 691-92 (Tenn. 2014) (citing Tenn. R. App. P. 13(d); *Armbrister v. Armbrister*, 414 S.W.3d 685, 692 (Tenn. 2013)). We review a trial court's determinations on issues of law *de novo* without any presumption of correctness. *Lovlace v. Copley*, 418 S.W.3d 1, 16 (Tenn. 2013).

## IV. DISCUSSION

### A.  *Entry of the Ex Parte Temporary Parenting Plan*

Father's first issue on appeal relates to the ex parte temporary parenting plan entered on October 20, 2011. As noted above, when the ex parte temporary parenting plan was entered, Father had not yet been served with the divorce complaint, and he apparently had no notice of the proceedings. Father was served with the divorce complaint and related documents on November 12, 2011. He filed an answer and

counter-complaint for divorce on November 22, 2011, along with a motion to set aside the ex parte temporary parenting plan and a proposed temporary parenting plan of his own. Father asserted that the ex parte temporary parenting plan was entered by the court "without any due process rights to [Father]," and he requested "an immediate hearing." The trial court held a hearing regarding the parenting issues on December 9, 2011, and both Mother and Father testified. On December 29, 2011, the trial court entered an "Amended Temporary Parenting Plan" that "confirmed" but also "amended" the ex parte temporary parenting plan by granting Father additional parenting time every Friday afternoon.

Father argues that the trial court should have held an expedited hearing prior to entering its initial temporary parenting plan, citing Tennessee Code Annotated section 36-6-403.[4] He complains that the trial court entered an ex parte temporary parenting plan without providing prior notice to him and without making detailed findings to support its decision. However, even assuming *arguendo* that the trial court erred in entering the original temporary parenting plan in this manner, any procedural defect in the initial proceeding was cured by the procedurally correct proceedings that followed. Elaborate procedures at one stage of the proceedings "may compensate for deficiencies at other stages." *Wells v. Tennessee Bd. of Regents*, 9 S.W.3d 779, 787 (Tenn. 1999) (concluding that any alleged due process deficiency with regard to the notice provided at an early stage was "certainly cured" at the time of the hearing in chancery court); *compare In re M.H.*, No. M2005-00117-COA-R3-PT, 2005 WL 3273073, at *5 (Tenn. Ct. App. Dec. 2, 2005) ("a violation of due process in [] dependency and neglect proceedings may be remedied by a subsequent termination of parental rights proceeding in which all due process requirements are met"). Even though the trial court did not explicitly grant Father's motion to set aside the ex parte temporary parenting plan, the trial court afforded

_____

[4]Tennessee Code Annotated section 36-6-403(2) provides:

> If the parties cannot agree to a temporary parenting plan, either or both parties may request the court to order dispute resolution. The court may immediately order the parties to participate in dispute resolution to establish a temporary parenting plan unless one (1) of the restrictions in § 36-6-406(a) exists. If dispute resolution is not available, either party may request and the court may order an expedited hearing to establish a temporary parenting plan. In either mediation or in a hearing before the court each party shall submit a proposed temporary parenting plan and a verified statement of income as defined by chapter 5 of this title, and a verified statement that the plan is proposed in good faith and is in the best interest of the child. If only one (1) party files a proposed temporary parenting plan in compliance with this section, that party may petition the court for an order adopting that party's plan by default, upon a finding by the court that the plan is in the child's best interest. In determining whether the proposed temporary parenting plan serves the best interests of the child, the court shall be governed by the allocation of residential time and support obligations contained in the child support guidelines and related provisions in chapter 5 of this title.

Father the procedural process he was seeking. The trial court held a hearing on the parenting issues, considered testimony from both parties, and entered an amended temporary parenting plan. Rule 36 of the Tennessee Rules of Appellate Procedure provides that a final judgment "shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process." Tenn. R. App. P. 36(b). Under the circumstances of this case, the trial court's entry of an ex parte temporary parenting plan does not present a ground for reversal of the trial court's final judgment, as it is clear beyond a reasonable doubt that any alleged procedural error was remedied by the subsequent proceedings.[5]

Father acknowledges that the trial court held a hearing and entered an amended temporary parenting plan, but he complains that the amended temporary parenting plan was nearly identical to the ex parte temporary parenting plan. However, this fact does not persuade us that Father was prejudiced by the entry of the ex parte temporary parenting plan. At the hearing giving rise to the amended temporary parenting plan, Father testified that he was working in Mississippi four days per week from 6 a.m. to 4:30 p.m., which required him to leave his house at around 5 a.m. Mother was unemployed. The amended temporary parenting plan awarded Father additional parenting time every Friday because he was off work on Fridays. However, Mother was designated primary residential parent of the two-year-old child. This designation is not surprising given the parties' daily schedules. The schedule set forth in the amended temporary parenting plan was clearly attributable to the parties' circumstances as they existed at the time of the hearing and not simply because of the terms of the ex parte temporary parenting plan previously entered.[6]

Father also argues that the trial court impermissibly drew presumptions from the

---

[5]Application of the harmless error doctrine does not signify a disrespect of the constitutional rights that were allegedly violated. *Momon v. State*, 18 S.W.3d 152, 165 (Tenn. 1999). To the contrary, the harmless error doctrine promotes public respect for the judicial system by focusing on the underlying fairness of the proceeding "'rather than on the virtually inevitable presence of immaterial error.'" *Id.* (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 681, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674 (1986)).

[6]In his reply brief, Father also asserted that the trial court failed to consider the factors in the parental relocation statute, Tenn. Code Ann. § 36-6-108. However, the parental relocation statute has been held inapplicable in cases where the trial court is making an initial custody decision or parenting arrangement. *See Graham v. Vaughn*, No. M2012-01982-COA-R3-CV, 2014 WL 356975, at *2 (Tenn. Ct. App. Jan. 30, 2014)(*no perm. app. filed*); *Pandey v. Shrivastava*, No. W2012-00059-COA-R3-CV, 2013 WL 657799, at *3 n.3 (Tenn. Ct. App. Feb. 22, 2013); *Sikora ex rel. Mook v. Mook*, 397 S.W.3d 137, 142 (Tenn. Ct. App. 2012); *Nasgovitz v. Nasgovitz*, No. M2010-02606-COA-R3-CV, 2012 WL 2445076, at *5-7 (Tenn. Ct. App. June 27, 2012); *Rudd v. Rudd*, No. W2009-00251-COA-R3-CV, 2009 WL 4642582, at *5-6 (Tenn. Ct. App. Dec. 9, 2009); *Gregory v. Gregory*, No. W2002-01049-COA-R3-CV, 2003 WL 21729431, at *5 (Tenn. Ct. App. July 14, 2003).

temporary parenting plan when formulating its permanent parenting plan. Father cites Tennessee Code Annotated section 36-6-406(e), which provides, "In entering a permanent parenting plan, the court shall not draw any presumptions from the provisions of the temporary parenting plan." In other words, a trial court cannot merely decide to leave the parties' situation "as is" in order to maintain the "status quo." *See Burden v. Burden*, 250 S.W.3d 899, 908 (Tenn. Ct. App. 2007). Father argues that the trial court in this case impermissibly relied on the temporary parenting plan when conducting its best interest analysis for the permanent parenting plan. Specifically, with regard to the best interest factor relating to which parent has been the primary caretaker for the child, the trial court made the following findings:

> Another factor for the court to consider is the degree to which each parent has been the primary caretaker. *The child has resided with Mother pursuant to a temporary parenting plan.* Prior to the temporary plan, Mother was the primary caretaker and took the child to the majority of his doctor's appointments and therapy. The court further finds that contrary to Father's opinion, the child does suffer from autism as stated by Mother and has special needs. Mother is not presently working and has more time to meet the needs of the child. This factor weighs in favor of Mother.

(Emphasis added.) Again, we find no reversible error in the trial court's decision with regard to this issue. The trial court did not simply draw a "presumption" from the temporary parenting plan. Although the trial court briefly mentioned that the Child had been residing with Mother pursuant to the temporary parenting plan, the court went on, in the very next sentence, to find that Mother was the primary caretaker for the Child even prior to the temporary parenting plan. Thus, even if we omit the trial court's reference to the provisions of the temporary parenting plan, Father still was not the primary caretaker, and this factor would not weigh in his favor. Father has not identified any reversible error with respect to this issue.[7]

---

[7]Alternatively, Father argues that the evidence supports a finding that the parties were equal caretakers because the calendars he submitted at trial indicated that he spent *almost* equal time with Child. According to Father's 2012 calendar, he spent 171 days with Child while Mother spent 194 days. During the first two months of 2013, Father had Child a total of 25 days while Mother had him 34. Even accepting this evidence as true, however, Mother still spent the majority of the time with Child. Moreover, the trial court found that this factor weighed in Mother's favor not only because of the number of days she spent with Child, but also because she was historically his primary caretaker, she took the child to the majority of his doctor's appointments and therapy, and at the time of the hearing, she had more time to meet the special needs of the child. Father's calendars do not lead us to conclude that this factor weighs in his favor.

### B. Consideration of the Petitions for Contempt

Next, Father argues that the trial court erred by failing to consider his original petition and amended petition for contempt prior to entering its judgment and permanent parenting plan. He claims that consideration of Mother's contemptuous conduct would have "altered the balance" of the best interest analysis in his favor.

As explained above, Father's original petition for contempt was filed in August 2012 and related to Mother's relocation to Alabama, enrollment of the Child in school there, and cohabitation with her paramour. In February 2013, Father's counsel filed the notice of hearing notifying Mother's counsel "that the parties will present their Proposed Permanent Parenting Plans to the Judge" at a hearing on March 18, 2013. At the beginning of that hearing, Father's attorney asked the trial court to also consider and resolve the pending petition for contempt. Mother's attorney objected on the basis that he had no notice that the contempt matters would be tried that day. The trial court ruled that the contempt petitions would be heard at a later date if necessary. When Father's counsel suggested that the contempt issues would be relevant to the trial court's best interest analysis, the trial judge clarified that he would only hear the issues involving the parenting plan and not the petitions for contempt. However, he clarified that counsel would be able to "bring those issues up" because they "would be relevant to who may be the residential parent." As an example, the trial court mentioned the allegation that Mother had taken the Child out of the jurisdiction without Father's consent. In sum, he stated, "Those are all issues that would be relevant toward [the] parenting plan, but I'm not going to make the ruling as far as contempt today." The trial court was consistent in carrying out this ruling during the hearing. When testimony was elicited regarding Father's alleged failure to pay child support, the trial judge reiterated that the parties were not "here for contempt, but if somebody is not paying their child support, then that would be a factor toward who should be the residential parent so we're going to let it in not for contempt purposes, but for purposes involving [the] comparative fitness test for the residential parents."[8]

Trial courts inherently possess "quite broad" common-law authority to control their dockets and the proceedings in their courts. *Hodges v. Attorney Gen.*, 43 S.W.3d 918, 921 (Tenn. Ct. App. 2000). Considering the fact that Father failed to notify Mother that any contempt matters would be addressed at the March 18 hearing, we cannot say that the trial court erred in declining to rule on the pending contempt petition that day. Although Father claims in his brief on appeal that he was "not allowed" to introduce relevant evidence regarding Mother's contemptuous behavior and "prohibited from

---

[8]Mother had filed a petition for contempt against Father, alleging nonpayment of child support. This petition was withdrawn before it was heard, as the trial court's judgment calculated Father's child support arrearage.

putting on proof" regarding her actions, the transcript of the hearing simply does not support this assertion. Mother admitted during the hearing that she had moved to Alabama with the Child and that she resided with her current husband prior to their marriage. Father does not mention any specific attempt he made to introduce additional evidence of contemptuous behavior, and from our review of the transcript, we are not aware of any. The trial judge made it clear that he would consider evidence regarding Mother's allegedly contemptuous behavior because of its relevance to the best interest analysis. Father simply failed to present the evidence.

Father also argues on appeal that the trial court should have conducted a hearing on his *amended* petition for contempt prior to ruling on the parenting issues because his amended petition involved Mother's failure to exercise joint decisionmaking. However, Father filed his amended petition for contempt on December 2, 2013, months after the March 2013 hearing and the entry of the trial court's May 2013 written "Opinion" adopting Mother's proposed permanent parenting plan. Father's amended petition for contempt alleged that Mother failed to comply with the trial court's permanent parenting plan. We certainly cannot fault the trial court for failing to resolve Father's amended petition for contempt prior to ruling on the parenting issues when the amended petition was not even filed until months after the hearing and the trial court's ruling.

## C. Father's Post-Hearing Motion for Additional Findings or New Trial

Father also argues on appeal that the trial court erred by denying his motion to amend or enter additional findings or for new trial. This motion was filed one month after the trial court entered its written "Opinion" adopting Mother's proposed permanent parenting plan but prior to entry of the "Judgment." In his motion, Father again asked the trial court to conduct a hearing on his original petition for contempt, determine whether Mother violated court orders, and consider this along with all other evidence pertaining to the best interest of the Child when making additional findings of fact. On appeal, Father asserts that the trial court should have granted his motion in order to correct an error of law or prevent injustice caused by the trial court's failure to consider Mother's contemptuous conduct during its best interest analysis. However, we have already concluded that the trial court did not err by considering the parenting issues prior to resolution of the contempt petition, which was not set for hearing, especially in light of the fact that the trial court explicitly instructed Father that he could present any evidence he desired regarding the underlying allegations. For the same reasons, we conclude that the trial court did not abuse its discretion in denying Father's post-hearing motion for additional findings or for a new trial. *See Morrissett v. Morrissett*, No. W2003-01052-COA-R3-CV, 2004 WL 1656479, at *12 (Tenn. Ct. App. July 23, 2004) (explaining that motions filed under Rule 52.02, Rule 59.02, and/or Rule 59.04 are each reviewed for an abuse of discretion).

11

We note Father's argument that the trial court erred by failing to make express factual findings explaining its decision to deny his post-hearing motion for additional findings or for a new trial.[9] However, the trial court was not required by Tennessee Rule of Civil Procedure 52.01 to provide a detailed explanation of the reasoning for its decision on Father's motion. Rule 52.01 states that findings of fact and conclusions of law "are unnecessary on decisions of motions" except for certain specified motions listed in the Rule. Father's motion does not qualify as one of the listed motions. Therefore, the trial court was not required to make findings of fact and conclusions of law with regard to his motion. *See Gooding v. Gooding*, No. M2014-01595-COA-R3-CV, 2015 WL 1947239, at *7 n.5 (Tenn. Ct. App. Apr. 29, 2015) ("there are discretionary decisions for which Tenn. R. Civ. P. 52.01 compliance is neither applicable nor mandated"); *PNC Multifamily Capital Institutional Fund XXVI Ltd. P'ship v. Mabry*, 402 S.W.3d 654, 660 (Tenn. Ct. App. 2012) (noting that findings of fact and conclusions of law are preferable but declining to vacate an order on a motion not listed in Rule 52.01 for lack of findings "in light of the clear language" of the Rule stating that findings of fact and conclusions of law are unnecessary on unspecified motions).

### D. Contempt Issues

The remaining issues presented on appeal relate to the contempt proceeding. However, the trial court's order resolving the contempt petitions was not properly appealed. "Contempt proceedings are sui generis and are incidental to the case out of which they arise." *Baker v. State*, 417 S.W.3d 428, 435 (Tenn. 2013). The phrase "sui generis" means "'a class unto itself.'" *Coffey v. Coffey*, No. E2012-00143-COA-R3-CV, 2013 WL 1279410, at *8 (Tenn. Ct. App. Mar. 28, 2013) (*no perm. app. filed*) (quoting *Sloan v. Poff*, No. M2009-01839-COA-R3-JV, 2011 WL 1166845 at *9 (Tenn. Ct. App. Mar. 29, 2011)); *see also Black's Law Dictionary* (9th ed. 2009) (defining "sui generis" as "Of its own kind or class; unique or peculiar"). A contempt proceeding "is considered incidental to the case out of which it arises, and often stems from an underlying proceeding that is not complete." *Doe v. Bd. of Prof'l Responsibility of Supreme Court of Tenn.*, 104 S.W.3d 465, 474 (Tenn. 2003). In other words, the contempt proceeding may be "related to the underlying case but independent from it." *Green v. Champs-Elysees, Inc.*, No. M2013-00232-COA-R3-CV, 2014 WL 644726, at *7 (Tenn. Ct. App. Feb. 18, 2014) (*no perm. app. filed*). Contempt proceedings are "'not necessarily connected to or identified with the proceeding out of which the contempt arose.'" *Hubbard v. Hubbard*, No. E2001-00110-COA-R3-CV, 2001 WL 1134606, at *2 n.3 (Tenn. Ct. App. Sept. 26, 2001) (quoting *Black's Law Dictionary*, 6th Ed. (West 1990), at p. 319).

Consequently, "[a] judgment of contempt fixing punishment is a final judgment

---

[9]In support of his argument, he cites only an unreported memorandum opinion, which included a dissent.

from which an appeal will lie." *Hall v. Hall*, 772 S.W.2d 432, 436 (Tenn. Ct. App. 1989) (citing *State v. Green*, 689 S.W.2d 189 (Tenn. Cr. App. 1984)). The judgment of contempt becomes final "upon entry of the judgment imposing a punishment therefore." *State ex rel. Garrison v. Scobey*, No. W2007-02367-COA-R3-JV, 2008 WL 4648359, at *4 (Tenn. Ct. App. Oct. 22, 2008) (citing *Green*, 689 S.W.2d at 190); see also *Rose v. Rose*, No. E2005-01833-COA-R3-CV, 2006 WL 1132086, at *4 (Tenn. Ct. App. Apr. 27, 2006) ("a judgment of contempt, summary or otherwise becomes final upon the entering of punishment therefor"); *Bailey v. Crum*, 183 S.W.3d 383, 387 (Tenn. Ct. App. 2005). "It matters not that the proceedings out of which the contempt arose are not complete." *Moody v. Hutchison*, 159 S.W.3d 15, 31 (Tenn.Ct.App.2004) (citing *Green*, 689 S.W.2d at 190). An order that imposes punishment for contempt "is a final appealable order in its own right, even though the proceedings in which the contempt arose are ongoing." *Coffey*, 2013 WL 1279410, at *5 (citing *Bailey*, 183 S.W.3d at 387).

By the same token, an unresolved contempt petition does not affect the finality of the orders in the underlying case. *See Salvucci v. Salvucci,* No. W2013-01967-COA-R3-CV, 2014 WL 4201441, at *6 (Tenn. Ct. App. Aug. 26, 2014). For example, in *Salvucci*, which was a divorce case, a wife filed a contempt petition while a motion to alter or amend was pending. *Id.* at *6 n.3. The order on the motion to alter or amend was entered July 30, 2013. *Id.* at *4. The husband timely filed a notice of appeal. *Id.* at *6. The trial court did not enter an order resolving the petition for contempt until December 13, 2013. *Id.* at *6 n.3. On appeal, this Court considered "whether the unresolved contempt motion made non-final the July 30, 2013 [order]." *Id.* We concluded that "the unresolved contempt petition did not affect the finality of the orders that are the subject of this appeal." *Id.* Recognizing that contempt proceedings are sui generis, we determined that resolution of the contempt petition was "'not among the issues that must be resolved before an otherwise final order in the underlying case will be considered final for the purposes of Tenn. R. App. P. 3(a).'" *Id.* (quoting *Poff v. Poff*, No. 01-A-01-9301-CV-00024, 1993 WL 73897, at *2 (Tenn. Ct. App. Mar. 17, 1993)).

Likewise, in *Poff*, which was a custody dispute, a party filed two requests for relief within thirty days of the trial court's custody order – a petition for contempt and a motion to alter or amend. *Poff*, 1993 WL 73897, at *1. The trial court denied the motion to alter or amend on August 23, 1991; however, it did not dismiss the petition for contempt until September 21, 1992. *Id.* The appellants filed a notice of appeal on September 25, 1992, seeking appellate review of the trial court's order denying their motion to alter or amend that had been entered more than a year earlier. *Id.* The appellants claimed that "all the claims between all the parties" were not resolved until September 21, 1992, when the circuit court dismissed their petition for contempt, and, therefore, their notice of appeal was timely. *Id.* The Court of Appeals disagreed. The court explained that contempt proceedings are "collateral to and independent of the cases or proceedings from which

13

they arise." *Id.* at \*2. As a result, the unresolved contempt petition "was an independent proceeding that had no effect on the finality of the circuit court's decision concerning Michael Poff's custody." *Id.* The trial court's August 23, 1991 order "resolved all the claims arising out of the parties' original petitions seeking custody" and "was, therefore, final and appealable even though the Poffs' contempt petition remained unresolved." *Id.* at \*3. Because the appellants did not file their notice of appeal within thirty days of the order on the motion to alter or amend, the court of appeals dismissed the appeal. *Id.*

In the case at bar, Father filed his original petition for contempt on August 20, 2012, during the divorce proceeding. After entry of the divorce decree and the trial court's custody order, the trial court entered an order resolving Father's motion to alter or amend on October 11, 2013. Father's notice of appeal was prematurely filed on August 2, 2013, but it became effective upon entry of the trial court's order resolving the pending motion to alter or amend. *See* Tenn. R. App. P. 4(e). Father filed his amended petition for contempt on December 2, 2013, four months after he filed his notice of appeal. The trial court entered its order resolving Father's original and amended petitions for contempt on July 17, 2014. Because Father did not file a notice of appeal with regard to the order resolving the matters of contempt, those issues are not before us on appeal.

We recognize that an order entered by this court may have caused some confusion in the minds of the parties. This court entered a show cause order on December 17, 2013, directing the parties to supplement the record with the entry of an order resolving the motion to alter or amend. We also mentioned the unresolved petition for contempt filed by Father in August 2012. Our order could have been interpreted as suggesting that the contempt proceeding was part of the underlying proceeding that needed to be resolved, and therefore, an additional notice of appeal would not be necessary. Because we may have contributed to the parties' confusion, we find it appropriate to note here that even if we were to consider Father's issues regarding the contempt proceeding, we would find them to lack merit. Father attempted to challenge the trial court's conclusion that Mother was not in criminal contempt, but "an appeal from an acquittal of criminal contempt is barred." *Overnite Transp. Co. v. Teamsters Local Union No. 480*, 172 S.W.3d 507, 510 (Tenn. 2005). Moreover, he failed to demonstrate that the trial court abused its discretion by declining to award Father his attorney's fees.

## V. CONCLUSION

For the aforementioned reasons, the decision of the general sessions court is hereby affirmed and remanded for further proceedings. Costs of this appeal are taxed to

14

the appellant, Christopher D. Smith, and his surety, for which execution may issue if necessary.

_____
BRANDON O. GIBSON, JUDGE