IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
October 25, 2012 Session

# PNC MULTIFAMILY CAPITAL INSTITUTIONAL FUND XXVI LIMITED PARTNERSHIP, ET AL. v. CARL MABRY

**Direct Appeal from the Chancery Court for Shelby County**
**No. CH-08-1494-02     Arnold B. Goldin, Chancellor**

_____

**No. W2011-01679-COA-R3-CV - Filed November 26, 2012**

_____

Appellant takes exception to the trial court's order, enforcing a settlement agreement. Following a judicial settlement conference, the parties signed a written agreement, which contemplated the execution of more formal settlement documents. When the formal documents were presented to Appellant, he refused to sign. Upon Appellees' motion, the trial court enforced the settlement and Appellant appeals. Discerning no error, we affirm.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Chancery Court Affirmed**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and HOLLY M. KIRBY, J., joined.

Venita Marie Martin, Memphis, Tennessee, for the appellant, Carl Mabry.

Robert L. Crawford and Joseph B. Reafsnyder, Memphis, Tennessee, and Charles L. Perry, Dallas, Texas, for the appellees, PNC Multifamily Capital Institutional Fund XXVI, Limited Partnership; PNC Multifamily Capital Institutional Fund XXX, Limited Partnership; PNC Multifamily Capital Institutional Fund XXI, Limited Partnership; Columbia Housing SLP Corporation; Eagles Landing Apartments, L.P.; April Woods Apartments, L.P.; and Harmony Woods Apartments, L.P.

## OPINION

This is the third appeal of this case, which involves allegations of misconduct, misappropriation and various breaches of contract and trust related to three tax credit partnerships that own tax-credit apartment complexes in Memphis, Tennessee. The issues

raised in this appeal are narrow and we will not tax the length of this opinion to offer a complete history. However, a full recitation of the factual histories and the particulars of our previous adjudications may be found at *Eagles Landing Development, L.L.C. v. Eagles Landing Apartments, L.P., et al.*, ----- S.W.3d -----, No. W2011–00689–COA–R3–CV, 2012 WL 346451 (Tenn. Ct. App. Feb. 2, 2012), *perm. app. denied* (Tenn. Aug. 16, 2012), and at *PNC Multifamily Capital Institutional Fund XXVI Limited Partnership, et al. v. Bluff City Community Development Corp., et al.*, ----- S.W.3d -----, No. W2011–00325–COA–R3–CV, 2012 WL 1572130 (Tenn. Ct. App. May 4, 2012), *perm. app. denied* (Tenn. Sept. 19, 2012). For purposes of the instant appeal, the relevant facts are as follows.

The Plaintiffs/Appellees in this case are: PNC Multifamily Capital Institutional Fund XXVI Limited Partnership ("Fund XXVI"), PNC Multifamily Capital Institutional Fund XXX Limited Partnership ("Fund XXX"); PNC Multifamily Capital Institutional Fund XXI Limited Partnership ("Fund XXI"); Columbia Housing SLP Corporation ("Columbia Housing"); Eagles Landing Apartments, LP ("Eagles Landing"); April Woods Apartments, L.P. ("April Woods"); and Harmony Woods Apartments, L.P. ("Harmony Woods") (collectively, the "Partnerships").[1]

On November 1, 2004, Fund XXI, Columbia Housing and Bluff City Community Development Corporation, Inc. ("Bluff City") entered into a partnership agreement to create Harmony Woods Apartments, L.P. The partnership agreement was intended to take advantage of the low income housing tax credit created by Congress, and was for the purpose of building and operationing certain low-to-moderate-income level apartment complexes in Memphis. A year after the initial agreement, on November 1, 2005, Fund XXVI, Columbia Housing, Bluff City, and another non-profit entity, Project Love, by and through its owners, Jesse and Johnnie Briggs, entered into a second partnership agreement to create an entity known as April Woods Apartments, L.P. One month after that, a third and final partnership agreement was created by Fund XXX, Columbia Housing, Bluff City, and Orson Sykes for the purpose of creating an entity known as Eagles Landing Apartments, L.P.

The sole Appellant in this case, Carl Mabry, was the president of Bluff City. As noted above, until August 12, 2008, Bluff City was the general partner in each of the Partnerships. On August 12, 2008, Appellees removed Bluff City from its position as general partner of

---

[1] Fund XXX is a limited partner in the Eagles Landing Partnership. Fund XXVI is a limited partner in the April Woods Partnership. Fund XXI is a limited partner in the Harmony Woods Partnership. Columbia Housing is a limited partner in the April Woods Partnership, the Eagles Landing Partnership, and the Harmony Woods Partnership. On April 12, 2008, Columbia Housing became the general partner in the April Woods, Eagles Landing, and Harmony Woods partnerships when Bluff City was removed as the general partner of these partnerships, *see infra.*

the Partnerships. This decision was brought about by three categories of alleged wrongdoing on the part of Bluff City and Mr. Mabry, including: (1) defaults under loan agreements and payment obligations; (2) transfer of interests in real property belonging to the limited partnerships without the limited partners' consent and misappropriation of funds of the limited partnerships; and (3) failure to meet various reporting obligations. Specifically, Appellees alleged the following instances of alleged misappropriation or diversion of partnership funds by Bluff City and/or Mr. Mabry:

• May 25, 2007 withdrawal of $3,462.81 from April Woods' account.
• November 20, 2007 withdrawal of $347,265.67 from April Woods' account.
• December 6, 2007 withdrawal of $100 from April Woods' account.
• December 6, 2007 withdrawal of $14,029.79 from April Woods' account.
• December 6, 2007 $240.82 check written from April Woods' account.
• December 6, 2007 $445.95 check written from April Woods' account.
• December 10, 2007 withdrawal of $36,615.37 from April Woods' account.
• December 10, 2007 withdrawal of $5,370 from April Woods' account.
• December 2007 four checks written from April Woods' account in amounts of $220, $17, $190, and $3,260.
• February 2, 2008 check written from April Woods' account in an unspecified amount.
• March 3, 2008 check written from April Woods' account in the amount of $10,746.58.
• June 18, 2008 check written from April Woods' account in the amount of $21,941.42.
• July 16, 2008 check written from April Woods' account in the amount of $445.95.
• July 17, 2008 check written from April Woods' account in the amount of $240.82.
• August 25, 2008 check written from April Woods' account in the amount of $240.82.
• August 25, 2008 check written from April Woods' account in the amount of $490.54.

In addition to the foregoing, Appellees alleged that some thirty-seven cash withdrawals were made by Mr. Mabry between May 2006 and November 2008 from two different April Woods' accounts in the total amount of approximately $165,000.00, and that these funds were used by Mabry or Bluff City for unauthorized purposes. The Appellees also alleged that seven different cash withdrawals were made by Mabry between January 2007 and August 2008 from an Eagles Landing account in the sum total of approximately $92,000.00, and that these funds were used by Mabry or Bluff City for unauthorized purposes. Appellees further alleged that Mabry improperly authorized Eagles Landing to accept funds as loans in the alleged amount of $13,000.00 from the Horizon Financial Group. Finally, Appellees alleged that there were other unspecified occasions on which Mabry, Bluff City, "or other defendants" made cash withdrawals from April Woods, Eagles Landing, or Harmony Woods accounts, or caused checks to be written on said accounts, or otherwise misappropriated funds or property belonging to those entities.

In *PNC Multifamily Capital Institutional Fund XXVI Limited Partnership, et al. v. Bluff City Community Development Corp., et al.*, 2012 WL 1572130, Appellees filed their second motion for partial summary judgment against defendants, including Bluff City, Mr. Mabry, Eagles Landing, Project Love, and Jesse Briggs, with that motion being scheduled for hearing on February 4, 2011.

On January 26, 2011, Mr. Mabry's attorney, Robert Spence, filed a motion to withdraw from the case. The motion states that Mabry and his counsel "have a substantial and irreconcilable disagreement related to the handling of this case, and, in particular, the responsive filing to Plaintiffs' second motion for partial summary judgment." Based upon this alleged disagreement, Mr. Spence averred that he could not continue to represent Mr. Mabry and, at the same time, comply with the obligations set forth in the Rules of Professional Conduct and the Rules of Civil Procedure. The motion further states that Mr. Mabry has "been notified of counsel's intent to withdraw and [has] no opposition to this Motion." The motion was granted by order of February 15, 2011. Mr. Mabry then requested an extension of time before the hearing on the second motion for partial summary judgment, which extension was granted by agreed order, entered on February 3, 2011.

There is nothing in the record to indicate that Mr. Mabry retained new counsel to represent him at the trial level after Mr. Spence withdrew from the case.[2] However, Mr. Mabry is represented, on appeal, by Venita M. Martin.

On February 8, 2011, the remaining parties, including Mr. Mabry, participated in a court-ordered judicial settlement conference, which was presided over by Chancellor Kenny Armstrong. At the conference, an agreement was reached and a document reflecting the settlement terms was prepared and signed by all of the participating parties, including Mr.

---

[2] It is well settled that pro se litigants are held to the same procedural and substantive standards to which lawyers must adhere. As recently explained by this Court:

> Parties who decide to represent themselves are entitled to fair and equal treatment by the courts. The courts should take into account that many pro se litigants have no legal training and little familiarity with the judicial system. However, the courts must also be mindful of the boundary between fairness to a pro se litigant and unfairness to the pro se litigant's adversary. Thus, the courts must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe.

*Jackson v. Lanphere*, No. M2010–01401–COA–R3–CV, 2011 WL 3566978, at *3 (Tenn. Ct. App. Aug. 12, 2011) (quoting *Hessmer v. Hessmer*, 138 S.W.3d 901, 903 (Tenn. Ct. App.2003)).

Mabry. The Chancellor noted that the settlement was "subject to drafting and execution of formal settlement documentation." Thereafter, Appellees' attorney prepared and circulated the formal settlement documentation, which included a mutual settlement agreement, with exhibits including: (a) rescission of joint use agreements, grant of limited easement, and restriction agreement; (b) cancellation, termination and rescission of quit claim deed; (c) document transferring interests in any developer fee payable to Eagles Landing; and (d) agreed final order dismissing claims involving certain defendants. Mr. Mabry refused to sign the formal settlement documents. On April 19, 2011, Appellees filed a motion to enforce the settlement agreement; an amended motion to enforce the settlement agreement was filed on April 20, 2011. In relevant part, the motion to enforce the settlement agreement avers that Mr. Mabry had insisted on including additional provisions that were not agreed to by the remaining parties at the judicial settlement conference and had refused to sign the final documents. On May 24, 2011, Mr. Mabry filed a response in opposition to the motion to enforce the settlement.

On July 8, 2011, the trial court entered orders enforcing the written settlement agreement. The July 8, 2011 orders consist of: (1) order granting Plaintiffs' amended motion to enforce settlement; (2) Order granting Plaintiffs' motion to enforce settlement (in particular voiding Eagles Landing II quit claim deed); and (3) Order granting Plaintiffs' motion to enforce settlement (in particular April Woods II Rescission of joint use agreements, grant of limited easement and restriction) (together the "July 8, 2011 Orders"). Mr. Mabry appeals, individually. He raises three issues for review as stated in his brief:

> 1. Whether the trial court erred in granting the Appellees' motion to enforce settlement agreement where the controlling document itself conditioned settlement upon the "drafting and execution of formal settlement document."

> 2. Whether the trial court erred in failing to prepare findings of fact and conclusions of law for enforcing the tentative settlement agreement.

> 3. Whether the trial court erred in refusing to continue the judicial settlement conference where Appellant and two corporate entities were not represented by counsel because their counsel withdrew two days before the scheduled conference.

Because this case was tried to the trial judge without a jury, we review the trial court's findings of fact *de novo* with a presumption of correctness, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). No presumption of correctness, however, attaches to the

trial court's conclusions of law and our review is *de novo*. ***Bowden v. Ward***, 275 S.W.3d 913, 916 (Tenn. 2000). For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. ***Walker v. Sidney Gilreath & Assocs.***, 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000); ***The Realty Shop, Inc. v. R.R. Westminster Holding, Inc.***, 7 S.W.3d 581, 596 (Tenn. Ct .App.1999)).

## Adequacy of Findings in July 8, 2011 Orders

We begin with Mr. Mabry's second issue, concerning the alleged lack of findings in the trial court's July 8, 2011 Orders.  Tennessee Rule of Civil Procedure 52.01 provides:

> In all actions tried upon the facts without a jury, the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment. The findings of a master, to the extent that the court adopts them, shall be considered as the findings of the court. If an opinion or memorandum of decision is filed, it will be sufficient if the findings of fact and conclusions of law appear therein. **Findings of fact and conclusions of law are unnecessary on decisions of motions under Rule 12 or 56 or any other motion except as provided in Rules 41.02 and 65.04(6).**

(emphasis added).  Appellees' motion to enforce the settlement agreement is neither a Rule 41.02 (i.e., involuntary dismissal), nor a Rule 65.04(6) (i.e., temporary injunction) so as to require findings under Rule 52.01.  Therefore, the plain language of Rule 52.01 provides that findings of fact and conclusions of law were not required. Mr. Mabry cites no other law that requires courts to make findings of fact and conclusions of law when enforcing a settlement agreement. Accordingly this issue is without merit.  We note, however, that a trial court should endeavor to explain its decision adequately, so that its voice is heard clearly by any reviewing court. Even though findings of fact may not be required under Rule 52, it is most often a good idea for the court to include its findings in its order regardless of whether the lack thereof constitutes error. Consequently, while findings of fact and conclusions of law are preferable, we decline to vacate the trial court's order for lack of findings  in light of the clear language of Rule 52.01.

## Continuation of the Judicial Settlement Conference

In his brief, Mr. Mabry asserts that, prior to withdrawal, his attorney "requested a continuance of the judicial settlement conference; however, the trial court denied the request." This allegation is not supported by the appellate record.  As discussed above, prior

to withdrawing from the case, Mr. Mabry's attorney requested a continuance of the hearing **on the second motion for partial summary judgment**, and this motion was granted. There is no indication in the record that Mr. Mabry ever requested a continuance of the judicial settlement conference. Moreover, although Mr. Mabry was self-represented at the judicial settlement conference, there is no indication in the record that he objected to that fact prior to participating in the conference or prior to signing the agreement that was reached at the conference, *see also supra* fn. 2. It is well settled that issues not raised at the trial level are considered waived on appeal. ***Waters v. Farr***, 291 S.W.3d 873, 918 (Tenn. 2009) (stating that issues not raised in the trial court are waived on appeal); Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error.").

Mr. Mabry also attempts to argue that, because Bluff City and Eagles Landing were also not represented by counsel at the settlement hearing, this fact is a bar to enforcement of the agreement against these defendants. In the first instance, Mr. Mabry is the sole appellant in this case. Accordingly, Mr. Mabry has no standing to make arguments on behalf of anyone other than himself. *See, e.g.,* ***Pelts v. Intl. Med. Serv. Corp.***, No. W2002-00388-COA-R3-CV, 2003 WL 22071462 (Tenn. Ct. App. Aug. 28, 2003), *perm. app. denied* (Tenn. Dec. 22, 2003). Because none of the other defendants have appealed the enforcement of the settlement agreement, the trial court's July 8, 2011 Orders are final as to these defendants. *See* ***Spectra Plastics, Inc. v. Nashoba Bank***, 15 S.W.3d 832, 840 (Tenn. Ct. App. 1999); ***McGaugh v. Galbreath***, 996 S.W.2d 186, 190 (Tenn. Ct. App. 1998).

### Enforcement of Settlement Agreement

In his appellate brief, Mr. Mabry first contends that the settlement agreement is unenforceable because there was "no meeting of the minds with regard to an essential term of the agreement . . . ." Specifically, in the Summary of the Argument section of his brief, Mr. Mabry contends that there was no meeting of the minds concerning payment of certain fees:

> [T]here was no meeting of the minds with regard to an essential term of the agreement where the Plaintiffs insist that they are entitled to property management fees and Defendants insist that the only fees that were subject to distribution to PNC under the settlement agreement were development fees and/or partnership fees. At no time did Defendants agree to pay to Plaintiffs fees paid to a third party for the day-to-day management of an apartment complex wholly unrelated to this litigation.

-7-

However, in the Argument Section of his brief, Mr. Mabry simply argues that the settlement agreement could not be enforced because it was "subject to drafting and execution of formal settlement documentation." Mr. Mabry does not return to his prior argument regarding the property management fees, nor does he specifically outline what other terms in the formal settlement agreement differed, and to what extent, from the informal agreement he undisputedly agreed to be bound by at the settlement conference. Generally, "when a party raises an issue in its brief, but fails to address it in the argument section of the brief, we consider the issue to be waived." ***Childress v. Union Realty Co.***, 97 S.W.3d 573, 578 (Tenn. Ct. App. 2002). Moreover, the ability of this Court to review the enforcement of the settlement agreement, and the question of whether settlement was, in fact, reached is stymied by the fact that the record does not contain a transcript of the hearing on the motion to enforce the settlement or a Tennessee Rule of Appellate Procedure 24 statement of the evidence. As Mr. Mabry is the appellant in this case, it is his burden to provide this Court with a fair, accurate, and complete account of what transpired in the trial court. ***In re M.L.D.***, 182 S.W.3d 890, 894 (Tenn. Ct. App. 2005). "It is well settled that, in the absence of a transcript or statement of the evidence, there is a conclusive presumption that there was sufficient evidence before the Trial Court to support its judgment and this Court must therefore affirm the judgment." ***Outdoor Management LLC v. Thomas***, 249 S.W.3d 368, 377 (Tenn. Ct. App. 2007).

Because it was properly raised as an issue and argued in the argument section of his brief, we next consider Mr. Mabry's contention that the settlement agreement at issue cannot be enforced because it was subject to execution of more formal documentation. From our review of the law on this subject, however, we conclude that the fact that Mr. Mabry refused to execute more formal documentation, does not, *ipso facto*, negate the trial court's ruling that a valid and enforceable settlement was, nonetheless, reached in this case. In the recent case of ***Waddle v. Elrod***, 367 S.W.3d 217 (Tenn. 2012), the parties reached a settlement, as reflected in an email exchange between attorneys. The email exchange contemplated the drafting of additional deeds and a release agreement. As is the case here, one of the parties subsequently refused to execute the additional documents once they had been drafted and presented. Despite the party's refusal, the court enforced the settlement, finding that the terms were sufficient to satisfy the Statute of Frauds. Likewise, in ***McMahan v. McMahan***, No. E2004-03032-COA-R3-CV, 2005 WL 3287475 (Tenn. Ct. App. Dec. 5, 2005), the parties reached an agreement in their divorce case. When formal documents were presented to Wife for signing, she refused. Wife argued that her repudiation of the agreement, prior to the trial court's entry of judgment, negates its validity. This Court disagreed, holding:

> 'Until approved by the courts, a mediated agreement is essentially contractual in nature.' ***Ledbetter***, 163 S.W. 3d at 685 (citing ***Envtl. Abatement, Inc. v. Astrum R.E. Corp.***, 27 S.W.3d 530, 539 (Tenn. Ct. App. 2000). *See also* ***Harbour***, 732 S.W.2d

at 600 (acknowledging that, though a consent judgment could not be entered once a party has repudiated the agreement, the agreement may still be a 'binding contract' subject to being enforced as other contracts."); ***Myers***, 2005 WL 936925, at *3 (holding the parties' signed and written mediation agreement to be an enforceable contract because the repudiating party failed to prove fraud, mistake, duress, or any other ground for invalidating the contract). Where parties have reached a mediated agreement, we have consistently applied the principles of contract law to determine whether, based upon that agreement, a judgment may be entered in a case. ***Persada***, 2002 WL 31640564, at *2. . . . The trial court could not enter a consent judgment based upon the mediated agreement after [Wife's] repudiation of the agreement, but it could, as it did, enforce a contract between the parties.

***McMahon***, 2005 WL 3287475, at *4. Likewise, in the instant case, there is no evidence that the Appellees engaged in any fraud, mistake, duress, or other grounds for invalidation of the contract that was reached at the judicial settlement. In fact, it is undisputed that Mr. Mabry participated at the conference. The terms of the parties' agreement were specifically set out by Chancellor Armstrong in the document that the parties signed. It is undisputed that Mr. Mabry personally signed that agreement before leaving the settlement conference. Based upon the record before us, and in light of the fact that no transcript or statement of the evidence has been provided to review in this case, we cannot conclude that it was error for the trial court to enforce the agreement against Mr. Mabry as a valid contract.

Finally, at oral argument of this appeal, Mr. Mabry's attorney also took issue with the fact that the trial court did not conduct an evidentiary hearing prior to entering its orders enforcing the settlement. Specifically, Mr. Mabry's attorney stated:

Our position is that an evidentiary hearing was required, where evidence and sworn testimony could be taken as to what the essential terms of that agreement were, as to what parties were bound by that agreement, and that did not occur, therefore the chancellor was erroneous in enforcing that settlement agreement.

No citation to authority was given by Mr. Mabry's attorney, and, in fact, the lack of an evidentiary hearing was not specifically raised and argued in his appellate brief, which is a direct violation of Tennessee Rule of Appellate Procedure 27(a)(7). Accordingly, even if we were to conclude that the trial court erred in failing to hold an evidentiary hearing, this

argument is waived by Mr. Mabry's failure to properly raise the issue in his appellate brief. *See* Tenn. R. App. P. 13(b) ("Review will generally only extend to those issues presented for review."). Moreover, there is no indication in the record that Mr. Mabry ever requested an evidentiary hearing prior to the entry of the trial court's order enforcing the settlement. Although, as noted above, Mr. Mabry did file a response in opposition to the enforcement of the settlement, there is no request therein for an evidentiary hearing. It is well established that an issue not raised in the trial court cannot be raised on appeal. *See **Bank of Fayette County v. Woody***, No. W2010–01798–COA–R3–CV2011, WL 2572052, at *3 (Tenn. Ct. App. June 30, 2011) (citing ***Waters v. Farr***, 291 S.W.3d 873, 918 (Tenn. 2009) (stating that issues not raised in the trial court are waived on appeal)). Accordingly, this issue is waived.

For the foregoing reasons, we affirm the order of the trial court, enforcing the settlement agreement. This case is remanded for all further proceedings as may be necessary and are consistent with this Opinion. Costs of this appeal are assessed against the Appellant, Carl Mabry, and his surety.

_____
J. STEVEN STAFFORD, JUDGE