IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 23, 2021 Session

**TARA JANAY SWICK v. DONOVAN ROBERT SWICK**

**Appeal from the Circuit Court for Knox County**
**No. 145716     Gregory S. McMillan, Judge**

_____

**No. E2020-00661-COA-R3-CV**

_____

The husband in this divorce case failed to answer the wife's complaint for legal separation or her amended complaint for divorce. The trial court awarded the wife a divorce, entered a permanent parenting plan, and divided the marital estate. The husband moved to set aside the judgment, and the trial court denied his motion. The husband appeals, and we affirm the trial court's judgment in all respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which D. MICHAEL SWINEY, C.J., and THOMAS R. FRIERSON, II, J., joined.

Donovan Robert Swick, Knoxville, Tennessee, pro se.

Michael B. Menefee, Knoxville, Tennessee, for the appellee, Tara Janay Swick.

**OPINION**

I. FACTUAL AND PROCEDURAL BACKGROUND

Tara Janay Swick ("Mother") and Donovan Robert Swick ("Father") were married for nearly eighteen years when Mother filed a complaint for legal separation in April 2019. Father failed to file a response and Mother filed an amended complaint for divorce a few months later, in August. Father failed to file a response to the amended complaint, and Mother moved for a default judgment in October 2019. The parties have five children who were between six and seventeen years old when Mother filed her initial complaint.

On November 15, 2019, the trial court held a hearing, at which Father appeared, and granted Mother's motion. The court divided the marital assets and adopted Mother's proposed parenting plan, awarding her 365 days of residential parenting time with the

children.  Father was awarded supervised visitation up to two times per week.[1]  The court awarded Mother child support and alimony in futuro in addition to half of her attorney's fees.  Father moved to set aside the default judgment pursuant to Tenn. Rs. Civ. P. 55.02 and 60.02 ("Father's Motion" or "his Motion").  On March 6, 2020, the trial court held a hearing on Father's Motion, which it denied by order entered on April 1, 2020.

Father appeals the trial court's denial of his Motion.  He argues that the trial court erred in the following ways:  (1) entering an erroneous order of protection; (2) denying him 50/50 custody of the children and forcing him to pay for supervised visits; (3) failing to conduct a best interest analysis; (4) not allowing him to present a meritorious defense; (5) not appointing a guardian ad litem; (6) not allowing the children whom he subpoenaed to testify at the hearing on his Motion; (7) awarding 100% of the family home to Mother; (8) failing to rule that Mother's withdrawal from Father's bank account constituted fraud or theft; (9) denying his Motion; and (10) failing to require Mother to undergo a psychological evaluation as Father was ordered to do.  Mother seeks an award of her attorney's fees pursuant to Tenn. Code Ann. § 36-5-103(c).

## II. ANALYSIS

### A. Order of Protection

The order of protection that Father asserts was "erroneous" is not included in the appellate record.  The trial court assigned the case number 145716 to the divorce matter on appeal, and it assigned the case number 145664 to the proceeding in which the order of protection was entered.  The only judgment Father appealed that is currently before this Court is Father's Motion.  We do not know if the order of protection was appealed, but it is not at issue in this case.  *See* TENN. R. APP. P. 3(e) (appeal "shall be taken by timely filing a notice of appeal" with the appellate court clerk).  As a result, we dismiss any issue Father raises concerning the order of protection.

### B. Permanent Parenting Plan

In a non-jury case such as this, an appellate court reviews the trial court's findings of fact de novo upon the record, affording the findings of fact a presumption of correctness unless the evidence preponderates otherwise.  TENN. R. APP. P. 13(d); *Kelly v. Kelly*, 445 S.W.3d 685, 691-92 (Tenn. 2014).  We review a trial court's conclusions of law de novo,

---

[1]In its final judgment, the trial court stated that a bridging order of protection was in effect "which limits Defendant/Father's contact with the children to supervised visits through The Assurance Group."  The court wrote that when the order of protection was entered, Father was ordered to undergo a psychiatric evaluation and to supply documentation to the court showing that he was following the recommendations of his treating professionals.  Father was also required to complete the twelve-hour parent education class before requesting unsupervised visitation with the parties' children.  The court noted in its order that "Father has failed to complete either of these tasks."

affording them no presumption of correctness. *Kelly*, 445 S.W.3d at 692; *Armbrister v. Armbrister*, 414 S.W.3d 685, 692 (Tenn. 2013).

The *Armbrister* Court described the review appellate courts apply to cases involving parenting plans:

> Because decisions regarding parenting arrangements are factually driven and require careful consideration of numerous factors, *Holloway v. Bradley*, 190 Tenn. 565, 230 S.W.2d 1003, 1006 (1950); *Brumit v. Brumit*, 948 S.W.2d 739, 740 (Tenn. Ct. App. 1997), trial judges, who have the opportunity to observe the witnesses and make credibility determinations, are better positioned to evaluate the facts than appellate judges. *Massey-Holt v. Holt,* 255 S.W.3d 603, 607 (Tenn. Ct. App. 2007). Thus, determining the details of parenting plans is "peculiarly within the broad discretion of the trial judge.'" *Suttles v. Suttles*, 748 S.W.2d 427, 429 (Tenn. 1988) (quoting *Edwards v. Edwards*, 501 S.W.2d 283, 291 (Tenn. Ct. App. 1973)). "It is not the function of appellate courts to tweak a [residential parenting schedule] in the hopes of achieving a more reasonable result than the trial court." *Eldridge v. Eldridge*, 42 S.W.3d 82, 88 (Tenn. 2001). A trial court's decision regarding the details of a residential parenting schedule should not be reversed absent an abuse of discretion. *Id.* "An abuse of discretion occurs when the trial court . . . appl[ies] an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice." *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011).

*Armbrister*, 414 S.W.3d at 693; *see also Kelly*, 445 S.W.3d at 692. "A trial court's broad discretion on custody matters extends to the question of which parent should be named primary residential parent." *Grissom v. Grissom*, 586 S.W.3d 387, 391 (Tenn. Ct. App. 2019); *see also Kathryne B.F. v. Michael David B.*, No. W2014-01863-COA-R3-CV, 2015 WL 4366311, at *8 (Tenn. Ct. App. July 16, 2015). As the *Armbrister* Court stated, "A trial court abuses its discretion in establishing a residential parenting schedule 'only when the trial court's ruling falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence found in the record.'" *Armbrister*, 414 S.W.3d at 693 (quoting *Eldridge,* 42 S.W.3d at 88). To prevail on appeal, Father must demonstrate that the trial court abused its discretion in naming Mother the primary residential parent and adopting her proposed parenting plan.

When a trial court is faced with divorcing parents who have one or more minor children, the court must determine the child(ren)'s primary residential parent by conducting a "'comparative fitness' analysis." *Grissom*, 586 S.W.3d at 392 (quoting *Chaffin v. Ellis*, 211 S.W.3d 264, 286 (Tenn. Ct. App. 2006)). In conducting this analysis, the court is required to consider the factors set forth in Tenn. Code Ann. § 36-6-106(a). *Id.*; *see also*

*Chaffin*, 211 S.W.3d at 286. "'[D]etermining a child's best interest is a fact-sensitive inquiry,'" *Grissom*, 586 S.W.3d at 393 (quoting *Solima v. Solima*, No. M2014-01452-COA-R3-CV, 2015 WL 4594134, at *4 (Tenn. Ct. App. July 30, 2015)), that

> "does not call for a rote examination of each of [the relevant] factors and then a determination of whether the sum of the factors tips in favor of or against the parent. The relevancy and weight to be given each factor depends on the unique facts of each case. Thus, depending upon the circumstances of a particular child and a particular parent, the consideration of one factor may very well dictate the outcome of the analysis."

*Id.* (quoting *Solima*, 2015 WL 4594134, at *4).

Father argues the trial court erred in failing to award him 50% of the residential parenting time. However, the only proposed parenting plan in the appellate record is the one Mother filed in which she asked for 365 days of parenting time. She requested that Father "exercise supervised visits up to twice per week at such times as may be arranged with the supervising agency." The appellate record contains no pleadings by Father and no requests for relief other than his Motion.

In approving Mother's proposed parenting plan, the trial court made the following findings of fact, among others:

> 9. At the time of the entry of this Order, there is in place a Bridging Order of Protection entered in the case of *Tara Swick v. Donovan Swick*, Knox County Fourth Circuit Court Docket #145664 which limits Defendant/Father's contact with the children to supervised visits through The Assurance Group. In that case, this Court ordered that Father shall undergo a psychiatric evaluation and supply documentation that he is following the recommendations of his treating professionals and that he shall complete the twelve (12) hour parent education class before he moves this Court for unsupervised visits with the parties' children. Defendant/Father has failed to complete either of these tasks.

> 10. During the course of the parties' marriage, Defendant/Father regularly lost his temper and made threatening and inappropriate remarks to and in the presence of the parties' children. Both before and during the pendency of this case and the related Order of Protection, Defendant/Father has made several disparaging remarks about the Plaintiff/Mother to the children both on the telephone and in person. Defendant/Father likewise made concerted efforts to alienate the children from their mother, their church, and family friends. The Court finds that the Defendant/Father regularly places his own interest ahead of the parties' minor children.

11. Mother has filed a Proposed Permanent Parenting Plan limiting [Father]'s contact with his children to supervised visits at The Assurance Group or other such agency or supervisor as the parties may agree. This Court finds Mother's Proposed Permanent Parenting Plan to be in the best interest of the minor children.

. . . .

20. . . . Per the agreement of the parties, [Mother] did not work outside of the home from the birth of the parties' oldest child until the parties separated. For several years, [Mother] acted as a home-school teacher for the children and, upon agreement of the parties, has made it her priority to care for the children since birth. . . .

21. [Mother] was primarily responsible for keeping the home and raising the parties' children during the course of the marriage. [Mother]'s contributions to the home and children allowed [Father] to build his independent design business, a customer base, and reputation as a designer that allows him to earn a substantial income. [Mother] is expected to continue to spend the vast majority of her time raising the parties' children for several years to come to the detriment of any job/career opportunities.

Trial courts are required to consider the following factors in determining which party should be named the primary residential parent:

(1) The strength, nature, and stability of the child's relationship with each parent, including whether one (1) parent has performed the majority of parenting responsibilities relating to the daily needs of the child;

(2) Each parent's or caregiver's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, consistent with the best interest of the child. In determining the willingness of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, the court shall consider the likelihood of each parent and caregiver to honor and facilitate court ordered parenting arrangements and rights, and the court shall further consider any history of either parent or any caregiver denying parenting time to either parent in violation of a court order;

(3) Refusal to attend a court ordered parent education seminar may be considered by the court as a lack of good faith effort in these proceedings;

(4) The disposition of each parent to provide the child with food, clothing, medical care, education and other necessary care;

(5) The degree to which a parent has been the primary caregiver, defined as the parent who has taken the greater responsibility for performing parental responsibilities;

(6) The love, affection, and emotional ties existing between each parent and the child;

(7) The emotional needs and developmental level of the child;

(8) The moral, physical, mental and emotional fitness of each parent as it relates to their ability to parent the child. The court may order an examination of a party under Rule 35 of the Tennessee Rules of Civil Procedure and, if necessary for the conduct of the proceedings, order the disclosure of confidential mental health information of a party under § 33-3-105(3). The court order required by § 33-3-105(3) must contain a qualified protective order that limits the dissemination of confidential protected mental health information to the purpose of the litigation pending before the court and provides for the return or destruction of the confidential protected mental health information at the conclusion of the proceedings;

(9) The child's interaction and interrelationships with siblings, other relatives and step-relatives, and mentors, as well as the child's involvement with the child's physical surroundings, school, or other significant activities;

(10) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment;

(11) Evidence of physical or emotional abuse to the child, to the other parent or to any other person. The court shall, where appropriate, refer any issues of abuse to juvenile court for further proceedings;

(12) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child;

(13) The reasonable preference of the child if twelve (12) years of age or older. The court may hear the preference of a younger child upon request. The preference of older children should normally be given greater weight than those of younger children;

(14) Each parent's employment schedule, and the court may make accommodations consistent with those schedules; and

(15) Any other factors deemed relevant by the court.

Tenn. Code Ann. § 36-6-106(a).

It is apparent from reviewing the trial court's factual findings that it considered factors 1, 2, 4, 5, 7, 11, and 14, and that they favored Mother. In addition, the trial court found that Father had failed to comply with the court's order to attend the parent education seminar (factor 3) or its order to undergo a Rule 35 examination (factor 8). Father does not contest the trial court's factual findings.

Given the broad discretion the trial court has in determining who should be designated the children's primary residential parent and in determining the parenting schedule, we conclude that Father has failed to demonstrate that the court abused its discretion or reached a decision that "'falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence found in the record.'" *Armbrister*, 414 S.W.3d at 693 (quoting *Eldridge*, 42 S.W.3d at 88). We affirm the trial court's decision designating Mother as the children's primary residential parent and adopting Mother's proposed permanent parenting plan.

C. Father's Defense Against Mother's Allegations

Father contends that the trial court did not allow him to defend himself against Mother's allegations at the hearing on Mother's motion for default judgment.[2] In his appellate brief, Father does not raise a defense to Mother's complaint for divorce or argue that she was not entitled to a decree of divorce. Instead, he complains that he was unable to defend the case against him "for the best interest of our children." Father focuses on the order of protection and the terms of the parenting plan, both of which we have already addressed. By not submitting a proposed parenting plan, Father failed to apprise the court of his wishes with respect to the children.

Father failed to file an answer to Mother's complaint for legal separation, and he failed to file an answer to her complaint for divorce. Father acknowledged that he was served with both of these documents. Tennessee Rule of Civil Procedure 8.02 states: "A

---

[2]The appellate record does not contain a transcript of the hearing on November 15, 2019; a CD rom is in the record that is an audio-visual recording of the hearing. Mother and two of her witnesses testified at the hearing. Father appeared and was permitted to make a statement, but he was not permitted to introduce any witnesses. Father told the judge that he is a changed man. The judge told Father that, although he was physically before the court, he was not legally before the court because he had not filed an answer to Mother's complaint for divorce.

party *shall* state in short and plain terms his or her defenses to each claim asserted and shall admit or deny the averments upon which the adverse party relies." (Emphasis added.) The use of the word "shall" in Rule 8.02 shows that its requirements are mandatory, not discretionary. *See Bellamy v. Cracker Barrel Old Country Store, Inc.*, 302 S.W.3d 278, 281 (Tenn. 2009).

Tennessee Rule of Civil Procedure 8.04 provides that "[a]verments in a pleading to which a responsive pleading is required are admitted when not denied" and then lists five exceptions to this rule. One of the exceptions is divorce actions, in which allegations "necessary to sustain an action for divorce" must be proved. TENN. R. CIV. P. 8.04(3); *see Sample v. Sample*, 605 S.W.3d 629, 638 (Tenn. Ct. App. 2018) (stating that a party may not obtain a divorce by default judgment). In its final order granting Mother a divorce, the trial court wrote that it "heard proof on the Permanent Parenting Plan, [Mother]'s grounds for divorce, and the equitable distribution of the parties' marital property." Thus, despite Mother's request for a default judgment and the trial court's title of its order ("Final Judgment by Default"), the trial court heard the proof necessary to sustain Mother's request for a divorce as required by Tenn. R. Civ. P. 8.04(3).

D. Guardian ad Litem

Father contends the trial court erred in failing to appoint a guardian ad litem to represent the children's interests. However, the record contains no motion or other filing by Father requesting that a guardian ad litem be appointed. Issues not raised in the trial court may not be raised for the first time on appeal. *PNC Multifamily Capital Institutional Fund XXVI Ltd. P'ship v. Mabry*, 402 S.W.3d 654, 662-63 (Tenn. Ct. App. 2012). Thus, Father has waived this issue. *See id.*

E. Children's Testimony

Father had subpoenas issued for each of the children in an effort to have them testify at the hearing on his Motion. Mother moved to quash the subpoenas, arguing that the children had no knowledge or information regarding any matter Father raised in his Motion. At the hearing, Father asked the court to hear the preferences of only two of the children, one aged fifteen and one aged nine. The court denied Father's request, writing that "the children's preference does not have bearing on the issues raised in Defendant's motion and given the facts surrounding this case, that the preference of the children would not constitute a successful showing of a meritorious defense."

In his brief, Father contends: "It is the right of children in the State of Tennessee to be allowed to testify." Father provides no citation to support this statement as required by Tennessee Rule of Appellate Procedure 27(a)(7), and he fails to explain how his children's testimony could have been relevant to the issue of setting aside the judgment. We affirm the trial court's decision to quash the subpoenas Father had issued to the children.

F.  Award of Family Home to Mother

In divorce cases, after classifying the parties' property as marital or separate, "the trial court is directed to 'equitably divide, distribute or assign the marital property between the parties without regard to marital fault in proportions as the court deems just.'" *Blakemore v. Blakemore*, No. W2018-01391-COA-R3-CV, 2020 WL 3468292, at *2 (Tenn. Ct. App. June 25, 2020) (quoting Tenn. Code Ann. § 36-4-121(a)(1)); *see also Snodgrass v. Snodgrass*, 295 S.W.3d 240, 246 (Tenn. 2009). An equitable division is not necessarily an equal division. *Snodgrass*, 295 S.W.3d at 255, n.16; *Baggett v. Baggett*, 422 S.W.3d 537, 543 (Tenn. Ct. App. 2013). The trial court has broad discretion in equitably distributing marital property between the parties, and we will defer to the trial court's distribution on appeal unless it is not consistent with the statutory factors or is not supported by a preponderance of the evidence. *Blakemore*, 2020 WL 3468292, at *2 (citing *Baggett*, 422 S.W.3d at 543); *see also Keyt v. Keyt*, 244 S.W.3d 321, 328 (Tenn. 2007); *Woodward v. Woodward*, 240 S.W.3d 825, 828 (Tenn. Ct. App. 2007). In making an equitable division, the trial court is guided by the twelve factors set forth at Tenn. Code Ann. § 36-4-121(c).

Father objects to the trial court's valuation of the marital house and its award of the property to Mother. In its order granting Mother a judgment, the trial court found that the parties "own an interest in a marital home" and that they "have approximately $70,402.00 of equity in the home." The court awarded Mother "all right, title, and interest in the marital home" and declared that she was responsible for the mortgage and any debt secured by or related to the home. The court awarded Father a 2019 Ford Mustang that Mother valued at $34,000; it awarded Mother a motorcycle she valued at $1,500, a 2006 minivan she valued at $300, and a 2008 Honda Pilot she valued at $1,500. The court then proceeded to divide the parties' personal property and debts between Mother and Father. The value of the personal property the court awarded Father totaled about $23,750, based on values provided by Mother, and the personal property the court awarded Mother totaled about $17,680, which values were also provided by Mother. The court awarded Father a retirement account that Mother valued at approximately $60,000.[3] The trial court did not assign a value to the marital home in either its order awarding Mother a divorce or its order denying Father's Motion.

In its order denying Father's Motion, the court wrote, in part:

On October 11, 2019, this matter came on for hearing on Plaintiff's Motion to Declare Facts Admitted and Plaintiff's Motion to Compel Discovery. Both parties were present for said hearing and the Court admonished and reminded [Father] to file with the Court his Local Rule 14 list of marital and separate property. The Court finds that [Father] failed to file a list of marital

---

[3]The trial court noted that Father failed to produce records reflecting the value of his retirement account.

and separate property and failed to file or offer anything to compete with [Mother]'s list of marital property and values.

We note that Father also failed to comply with Court of Appeals Rule 7, which provides, in pertinent part, as follows:

> (a) In any domestic relations appeal in which either party takes issue with the classification of property or debt or with the manner in which the trial court divided or allocated the marital property or debt, the brief of the party raising the issue shall contain, in the statement of facts or in an appendix, a table in a form substantially similar to the form attached hereto. This table shall list all property and debts considered by the trial court, including: (1) all separate property, (2) all marital property, and (3) all separate and marital debts.

> (b) Each entry in the table must include a citation to the record where each party's evidence regarding the classification or valuation of the property or debt can be found and a citation to the record where the trial court's decision regarding the classification, valuation, division, or allocation of the property or debt can be found.

We have ruled on numerous occasions that an appellant who fails to comply with Court of Appeals Rule 7 waives his or her right to object to the trial court's equitable division of marital property. *See Adams v. Adams*, No. M2019-00309-COA-R3-CV, 2020 WL 2062302, at *5 (Tenn. Ct. App. Apr. 29, 2020); *Harden v. Harden*, No. M2009-01302-COA-R3-CV, 2010 WL 2612688, at *8 (Tenn. Ct. App. June 30, 2010); *Slaughter v. Slaughter*, No. W2007-01488-COA-R3-CV, 2008 WL 1970491, at *2 (Tenn. Ct. App. May 8, 2008). Father provides no reason for this Court to suspend the requirements of Rule 7. As a result, we deem Father's issue concerning the valuation and award of the marital home to Mother waived. *See Adams*, 2020 WL 2062302, at *5.

G. Mother's Withdrawals of Funds from Father's Account

At the hearing on his Motion, Father testified that Mother unlawfully withdrew about $30,000 from his personal money market account and moved it to the parties' joint bank account, and that she then moved this money to another account that was under her sole control. Father stated that the money Mother withdrew from his money market account included an inheritance he received from his relatives and contended that Mother had no right to these funds. However, Father admitted that he deposited at least $35,000 of marital funds into his money market account before Mother withdrew any of the money about which Father complains. Mother acknowledged withdrawing $26,000 from Father's account. She testified that she used this money to pay the parties' mortgage, utility bills, credit card bills, family food expenses, car repairs that totaled over $3,000, and lawyer fees.

In its order denying Father's Motion, the court wrote:

> [Father] offered evidence that [Mother] made withdraws from an account that once contained his separate inheritance. However, [Mother] offered evidence reflecting deposits into the account from marital funds in excess of any withdraws made. The Court finds that [Father] did not meet his burden to show any type of fraud related to said withdraws.

Father fails to establish that the evidence preponderates against the trial court's findings on this issue. Accordingly, we affirm the trial court's judgment that Mother's withdrawal of funds was not improper.

## H. Denial of Father's Motion

Father contends that the trial court erred in denying his Motion. Father moved the court to set aside the judgment pursuant to Tenn. Rs. Civ. P. 55.02 and 60.02. Rule 55.02 provides: "For good cause shown the court may set aside a judgment by default in accordance with Rule 60.02." Rule 60.02 provides, in relevant part:

> On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (3) the judgment is void; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that a judgment should have prospective application; or (5) any other reason justifying relief from the operation of the judgment.

Although he was not specific in his Motion or appellate brief, Father appears to rely on Rule 60.02(1) – that the court erred in failing to set aside the judgment due to mistake, inadvertence, surprise or excusable neglect. "In reviewing a trial court's decision to grant or deny relief pursuant to Rule 60.02, we give great deference to the trial court." *Henry v. Goins*, 104 S.W.3d 475, 479 (Tenn. 2003)) (citing *Underwood v. Zurich Ins. Co.,* 854 S.W.2d 94, 97 (Tenn. 1993)). An appellate court will not set aside a trial court's ruling in the absence of evidence that the trial court "'applied an incorrect legal standard, or reached a decision which is against logic or reasoning that caused an injustice to the party complaining.'" *Id.* (quoting *State v. Stevens,* 78 S.W.3d 817, 832 (Tenn. 2002)). An appellate court may not substitute its judgment for that of the trial court. *Id.*; *Eldridge*, 42 S.W.3d at 85.

"'The bar for obtaining relief [pursuant to Rule 60.02] is set very high, and the burden borne by the moving party is heavy.'" *Pruitt v. Pruitt*, No. W2018-00453-COA-

R3-CV, 2019 WL 450416, at *2 (Tenn. Ct. App. Feb. 5, 2019) (quoting *DeLong v. Vanderbilt Univ.*, 186 S.W.3d 506, 511 (Tenn. Ct. App. 2005)); *see also Henry*, 104 S.W.3d at 482. "'To obtain relief under Rule 60.02, the moving party "must describe the basis of relief with specificity" and establish by clear and convincing evidence that [he or] she is entitled to relief.'" *Pruitt*, 2019 WL 450416, at *3 (quoting *Hussey v. Woods*, 538 S.W.3d 476, 483 (Tenn. 2017) (internal citations omitted)).

Father asserts that he believed his attorney was going to file an answer to Mother's complaint for legal separation. Father's attorney was permitted to withdraw from representing Father before Mother filed her amended complaint for divorce, and Father does not explain why he did not file an answer to the amended complaint or file any other papers with the trial court before the final judgment was granted. The trial court found that Father's Motion "failed to set out any grounds or reasons to set aside [the judgment]" and that Father "likewise failed to prove any grounds or reasons to set aside the judgment at the hearing" on his Motion. We conclude that Father failed to describe the basis of relief he was seeking with specificity or to establish by clear and convincing evidence that he was entitled to relief from the trial court. *See Pruitt*, 2019 WL 450416, at *3. Because Father does not demonstrate that the trial court abused its discretion in denying his Motion, we affirm the trial court's judgment in this regard.

I. Rule 35 Examination

Father's final argument is that the trial court erred in failing to require Mother to undergo a Rule 35 examination. Tennessee Rule of Civil Procedure 35.01 provides:

> When the mental or physical condition (including the blood group) of a party, or of a person in the custody or under the legal control of a party, is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a suitably licensed or certified examiner or to produce for examination the person in custody or legal control. The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made.

Our review of the appellate record reveals that Father did not raise this issue before the trial court. As discussed above, he is precluded from raising an issue for the first time on appeal. *See Fayne v. Vincent*, 301 S.W.3d 162, 171 (Tenn. 2009); *Stephens v. Home Depot U.S.A., Inc.*, 529 S.W.3d 63, 76 (Tenn. Ct. App. 2016). We thus hold that Father has waived his right to raise this issue on appeal.

J.  Mother's Request for Attorney's Fees on Appeal

Mother requests an award of the attorney's fees she incurred on appeal pursuant to Tenn. Code Ann. § 36-5-103(c).  This statute provides:

> (c) A prevailing party may recover reasonable attorney's fees, which may be fixed and allowed in the court's discretion, from the non-prevailing party in any criminal or civil contempt action or other proceeding to enforce, alter, change, or modify any decree of alimony, child support, or provision of a permanent parenting plan order, or in any suit or action concerning the adjudication of the custody or change of custody of any children, both upon the original divorce hearing and at any subsequent hearing.

Our Supreme Court has instructed courts to exercise discretion in determining whether attorney's fees are warranted in a particular case and has written that "'[a]lthough there is no absolute right to such fees, . . . their award in custody and support proceedings is familiar and almost commonplace.'" *Eberbach v. Eberbach*, 535 S.W.3d 467, 476 (Tenn. 2017) (quoting *Taylor v. Fezell*, 158 S.W.3d 352, 360 (Tenn. 2005)).  We hereby utilize our discretion to award Mother the reasonable attorney's fees she incurred in defending Father's appeal.

## III.  CONCLUSION

The judgment of the trial court is affirmed in all respects.  This case is remanded for a determination of the reasonable attorney's fees Mother incurred on appeal, which Father shall be ordered to pay.  Costs of this appeal are assessed against the appellant, Donovan Robert Swick, for which execution shall issue if necessary.

_/s/ Andy D. Bennett_____
ANDY D. BENNETT, JUDGE