IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
June 9, 2021 Session

## THE ESTATE OF STELLA RUTH HUGHES, ET AL. v. C. RAY ADAMS, ET AL.

**Appeal from the Chancery Court for Greene County**
**No. 20150070        Douglas T. Jenkins, Chancellor**

_____

**No. E2020-01383-COA-R3-CV**

_____

This case involves a motion by the defendants to enforce an alleged "walkaway settlement" agreement. The defendants argued that the plaintiffs—through their former attorney— agreed to a binding settlement agreement. After an evidentiary hearing on the motion, the trial court granted the motion and dismissed the case. The trial court's decision is affirmed in part, reversed in part, vacated in part, and remanded.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part, Reversed in Part, Vacated in Part, and Remanded.**

CARMA DENNIS MCGEE, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and KENNY W. ARMSTRONG, J., joined.

H. Scott Reams, Morristown, Tennessee, for the appellants, The Estate of Stella Ruth Hughes, Hughes Living Trust, and Lynda Hughes Dawson.

Gregory Brown and Colleen T.G. Conboy, Knoxville, Tennessee, for the appellees, C. Ray Adams, Kevin Ewers, and Adams & Plucker, CPAs, PLLP.

**MEMORANDUM OPINION[1]**

---

[1] Rule 10 of the Rules of the Court of Appeals provides as follows:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

# I. FACTS AND PROCEDURAL HISTORY

This case stems from an accounting malpractice action filed by Lynda Hughes Dawson, individually and as the personal representative of The Estate of Stella Ruth Hughes and the trustee of the Hughes Living Trust (collectively "Plaintiffs"). C. Ray Adams, Kevin Ewers, and the accounting firm of Adams & Plucker, CPAs, PLLP (collectively "Defendants") were the accountants for the late husband of Stella Hughes. After Ms. Hughes passed away on February 20, 2009, Defendants agreed to file an Estate Tax Return on behalf of Ms. Hughes's estate.

Thereafter, Defendants filed an Estate Tax Return beyond the filing deadline. As a result of the late filing, the Estate incurred additional penalties and interest. On March 10, 2015, Plaintiffs initiated this case, claiming that the additional penalties and interest were incurred as a result of Defendants' negligence in failing to timely file the Estate Tax Return. On May 18, 2015, Defendants answered Plaintiffs' complaint and filed a counter-complaint against Plaintiffs, asserting that Plaintiffs failed to pay for accounting and tax services that Defendants provided for the Estate.

In July 2017, after several years of litigation, counsel for both Plaintiffs and Defendants engaged in settlement discussions on the outstanding issues. Those discussions are the underlying basis for this appeal. Defendants argue that the discussions resulted in the parties agreeing to a "walkaway settlement."[2] Plaintiffs assert that the parties never formed an enforceable settlement agreement. Amidst the settlement discussions, on July 10, 2017, attorney Mark Jendrek, then-counsel for Plaintiffs, moved to withdraw from representation. On September 20, 2017, the trial court granted the motion and permitted Mr. Jendrek to withdraw from representation.

The acrimonious litigation continued into November 2017. On November 21, 2017, Defendants moved to enforce the alleged settlement agreement. In support of their motion, Defendants filed a brief that outlined the alleged sequence of events related to the settlement discussions and included copies of partially-redacted emails. The emails appeared to indicate that Defendants consented to a walkaway settlement agreement; however, the identity of certain parties to the emails was redacted. Thereafter, Plaintiffs moved to compel discovery of any correspondence by Defendants involving an alleged settlement agreement. Specifically, Plaintiffs claimed that even if the emails were covered by the attorney-client privilege, Defendants had waived any such privilege associated with the communications by relying on the emails in their motion to enforce the alleged settlement agreement.

---

[2] Although the parties never signed a written settlement agreement, it appears that the parties' attorneys interpreted a "walkaway" agreement to mean that the parties would each voluntarily dismiss their respective claims.

Prior to ruling on the outstanding motions, the trial court directed Defendants to submit the subject emails for an *in camera* review by the court. At a hearing on August 13, 2018, the trial court announced that the redacted portions of the emails that were submitted by Defendants were protected by the attorney-client privilege and not subject to further discovery. Subsequently, the trial court entered a written order memorializing its ruling, stating that the redacted portions of the emails were protected by the attorney-client privilege. The court did not address any potential waiver of the privilege.

On September 17, 2019, the trial court held an evidentiary hearing on Defendants' motion to enforce the alleged settlement agreement. Two witnesses testified at the hearing: Gregory Brown (counsel for Defendants) and Ms. Dawson.

Mr. Brown testified on his recollection of the settlement negotiations with Plaintiffs' former counsel, Mark Jendrek. Prior to any settlement discussions, Mr. Jendrek informed Mr. Brown that he intended to withdraw as Plaintiffs' counsel. Mr. Brown encouraged Mr. Jendrek not to withdraw and to instead engage in settlement discussions. Mr. Brown testified that Mr. Jendrek agreed to talk with Ms. Dawson about a potential settlement agreement. Many of Mr. Brown's communications with Mr. Jendrek were memorialized in emails. Copies of those emails were entered into evidence at the hearing.

Mr. Brown claims that he and Mr. Jendrek spoke on the phone on Friday, July 14, 2017, to discuss the status of their claims and a potential "walkaway settlement" agreement. He testified that at the end of their conversation, Mr. Jendrek indicated that he would speak with Ms. Dawson to inquire whether she would consider a walkaway settlement agreement. According to an email exhibit, at 3:15 PM on July 14, Mr. Jendrek emailed Mr. Brown and stated, "Just talked with [Ms. Dawson] and I think she will go for a 'walkaway.'" Mr. Brown testified that, approximately one or two hours later, Mr. Jendrek called again and stated that Ms. Dawson was seeking a walkaway settlement. In response, Mr. Brown asked whether Ms. Dawson was making an offer to settle. Mr. Brown asserts that Mr. Jendrek answered that it was an offer to settle.

Several days after his conversation with Mr. Jendrek, on July 16, 2017, Mr. Brown emailed Defendants to communicate the alleged settlement offer. On Monday, July 17, 2017, Mr. Brown emailed Mr. Jendrek about the status of the potential agreement. In this email, Mr. Brown indicated that he communicated the proposed offer to Defendants but that he had not yet spoken to them about their willingness to accept a settlement. Shortly thereafter, Defendants and their insurers informed Mr. Brown that they accepted the alleged walkaway settlement.

In August 2017, Mr. Brown and Mr. Jendrek exchanged written drafts of the proposed agreement. On August 23, 2017, Mr. Jendrek emailed Mr. Brown regarding Ms. Dawson's willingness to enter into a settlement agreement. In the email, Mr. Jendrek stated

that after their conversations on July 14, Ms. Dawson informed Mr. Jendrek that she wanted another attorney to review the case. According to Mr. Brown, this was the first time that he learned about another attorney becoming involved for Plaintiffs. Regardless, Mr. Brown testified that he believed the parties reached an agreement on July 17, 2017, upon his receipt of confirmation from Defendants that they accepted the walkaway settlement.

Ms. Dawson testified to a different sequence of events than Mr. Brown. According to Ms. Dawson, during her conversation with Mr. Jendrek on July 14, 2017, she was "weighing [her] options" on how to proceed. She testified that Mr. Jendrek did not mention that Defendants were willing to settle. She also testified that she did not indicate a desire to reach a settlement agreement. She emphasized that she did not give Mr. Jendrek authority to settle the case on behalf of Plaintiffs. She testified that after their telephone conversation on July 14, she informed Mr. Jendrek via text message that she wanted another attorney to review the case. A copy of the purported text message was admitted into evidence. The message indicates that Ms. Dawson texted Mr. Jendrek at 3:50 PM on July 14, 2017, and stated that she wanted another attorney to analyze the case and give his opinion before Mr. Jendrek agreed to settle.[3] According to Ms. Dawson, she never reviewed a settlement agreement and one was not presented to her. She further testified that after July 14, the next conversation she shared with Mr. Jendrek regarding a potential settlement took place on September 20, 2017, the day Mr. Jendrek was permitted to withdraw from representation. After the trial court permitted Mr. Jendrek to withdraw as counsel for Plaintiffs, attorney H. Scott Reams filed a notice of appearance as counsel for Plaintiffs.

Prior to the evidentiary hearing, the parties deposed Mr. Jendrek. A transcript from Mr. Jendrek's deposition was entered into evidence at the hearing. At his deposition, Mr. Jendrek verified many of the discussions regarding the alleged settlement agreement. Mr. Jendrek admitted that, at one point, he informed Mr. Brown that he believed Ms. Dawson was willing to accept a walkaway agreement. However, he also stated that he did not believe the parties reached a settlement because they never signed a written agreement.

At the conclusion of the evidentiary hearing, the trial judge initially rendered an oral ruling on Defendants' motion to enforce the settlement agreement. However, after further discussion with the attorneys, the trial judge stated that he was taking the matter under advisement and would draft a written order that would detail his decision and findings. On February 19, 2020, the trial court entered a written order on Defendants' motion. The trial

---

[3] After the evidentiary hearing, Defendants took issue with the purported authenticity of the copied text message. On appeal, they again argue that the circumstances surrounding the text message are "suspect." However, they do not list the admission of the message into evidence as an issue on appeal. Therefore, any potential error by the trial court in admitting the message as an exhibit will not be reviewed by this Court. *See Hodge v. Craig*, 382 S.W.3d 325, 334 (Tenn. 2012) (citing Tenn. R. App. P. 13(b); *State v. Bledsoe*, 226 S.W.3d 349, 353 (Tenn. 2007)) (stating that "[a]ppellate review is generally limited to the issues that have been presented for review").

- 4 -

court's written order granted Defendants' motion but failed to provide any reasoning or analysis on why the court took this action. Instead, the order mainly described the recent history of the case, and stated:

> This cause came to be heard on 17 September 2019 on the Defendants' Motion to Enforce Settlement Agreement. There have been several issues resolved by the Court since 17 September 2019 and the present time. Those rulings will be memorialized in a separate order. For the reasons uttered by the Court after hearing on 17 September 2019, the Motion to Enforce Settlement Agreement is granted.

> It is therefore ORDERED that the Complaint and Counter-Complaint are hereby dismissed with prejudice and the costs are taxed to the Defendants/Counter-Plaintiffs.

On March 17, 2020, Plaintiffs moved for the trial court to amend its ruling, to make additional findings, or for a new trial. In their motion, Plaintiffs argued that the trial court's findings were contrary to the evidence presented at the evidentiary hearing. Specifically, Plaintiffs argued that the parties did not reach a settlement agreement before Ms. Dawson revoked Mr. Jendrek's authority to settle the case by sending him the text message at 3:50 PM on July 14, 2017.

On August 5, 2020, the trial court held a hearing on Plaintiffs' motion to alter or amend. At the conclusion of the hearing, the trial court rendered another oral ruling and denied Plaintiffs' motion. Unlike its previous order on Defendants' motion, on September 15, 2020, the trial court expressly incorporated the transcript of its August 5 oral ruling into a written order. In its August 5 oral ruling, the trial court stated that the motion was denied because the case was settled before Ms. Dawson sent the text message to Mr. Jendrek at 3:50 PM on July 14, 2017.

Plaintiffs timely appealed.

## II.    ISSUES PRESENTED

Plaintiffs present two issues on appeal, which we have reworded:

1. Whether the trial court erred in denying Plaintiffs' motion to compel Defendants to produce unredacted copies of the emails that were presented by Defendants; and

2. Whether the trial court erred in finding the parties agreed to a "walkaway settlement" agreement.

For the reasons stated herein, we affirm the trial court's decision in part, reverse in part, vacate in part, and remand.

## III.    STANDARD OF REVIEW

"Decisions with regard to pre-trial discovery matters rest within the sound discretion of the trial court." *Benton v. Snyder*, 825 S.W.2d 409, 416 (Tenn. 1992). "Generally, a trial judge's ruling on a discovery-related issue will not be disturbed absent an abuse of discretion." *Culbertson v. Culbertson*, 455 S.W.3d 107, 125 (Tenn. Ct. App. 2014) (*Culbertson II*). "A court abuses its discretion when it applies an incorrect legal standard or its decision is illogical or unreasonable, is based on a clearly erroneous assessment of the evidence, or utilizes reasoning that results in an injustice to the complaining party." *Bidwell ex rel. Bidwell v. Strait*, 618 S.W.3d 309, 318 (Tenn. 2021). "[W]hether a party has waived a privilege is a mixed question of law and fact, subject to *de novo* review." *Culbertson II*, 455 S.W.3d at 125. First, we "determine whether the facts on which the claimed waiver is based are supported by a preponderance of the evidence in the record. We then determine, as a question of law, whether the facts as supported by a preponderance of the evidence constitute a waiver of the privilege." *Id.*

In civil actions that are heard without a jury, the trial court's factual findings are reviewed *de novo* with a presumption of correctness, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *Armbrister v. Armbrister*, 414 S.W.3d 685, 692 (Tenn. 2013); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). Questions of law are also reviewed *de novo* but with no presumption of correctness. *Eberbach v. Eberbach*, 535 S.W.3d 467, 473 (Tenn. 2017) (citing *Barnes v. Barnes*, 193 S.W.3d 495, 498 (Tenn. 2006); *Taylor v. Fezell*, 158 S.W.3d 352, 357 (Tenn. 2005)).

## IV.    DISCUSSION

### A. Plaintiffs' Motion to Compel

We begin with a discussion on the trial court's application of the attorney-client privilege to restrict Plaintiffs' access to Defendants' emails in this case. The trial court ruled that the redacted portions of the subject emails were protected by the attorney-client privilege and not subject to further discovery. Plaintiffs do not dispute that the redacted portions of emails were subject to the attorney-client privilege. Therefore, we affirm the court's finding in this regard and will not further address the applicability of the privilege. Instead, we will consider Plaintiffs' argument that Defendants have waived the privilege in regard to their email communication.

Defendants relied upon several emails as support for their motion to enforce the settlement agreement. Copies of the emails were included in Defendants' brief accompanying their motion. Emails that were between Mr. Brown and Mr. Jendrek were

completely unredacted. However, portions of other emails were redacted. The partially-redacted emails were purportedly between Mr. Brown and parties that were identified only as Mr. Brown's "clients." Aside from being labeled as "clients" of Mr. Brown, the identities of several of the corresponding parties were redacted. After Plaintiffs moved to compel production of the contents of the redacted emails, the trial court conducted an *in camera* review of the emails and determined that the redacted portions were protected by the attorney-client privilege.

On appeal, Plaintiffs claim that the trial court erred in refusing to order Defendants to produce unredacted copies of the emails relied upon in their motion. Plaintiffs argue that, although the attorney-client privilege applies to the redacted emails, Defendants waived any such privilege by relying on the emails in their motion to enforce the settlement agreement. A party can impliedly waive the attorney-client privilege when three conditions exist:

(1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party;

(2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and

(3) application of the privilege would have denied the opposing party access to information vital to his [or her] defense.

*Culbertson II*, 455 S.W.3d at 133 (alteration in original) (quoting *Bryan v. State*, 848 S.W.2d 72, 81 (Tenn. Crim. App. 1992)). In their motion to compel production of the redacted emails, Plaintiffs asserted their waiver argument, claiming that Defendants waived the attorney-client privilege to the redacted emails under the above-*Culbertson II* factors. However, the court in ruling on the motion neither addressed whether Defendants waived the attorney-client privilege nor mentioned any analysis of the applicable factors from *Culbertson II*, 455 S.W.3d at 133. As a result, we conclude that the trial court erred in denying Plaintiffs' motion to require Defendants to disclose the full, unredacted, emails without first determining whether Defendants waived the attorney-client privilege. *See Culbertson v. Culbertson*, 393 S.W.3d 678, 686-87 (Tenn. Ct. App. 2012) (*Culbertson I*) (stating "that the trial court erred to the extent that it ordered disclosure of Husband's psychological records to Wife without properly considering the application of the psychologist-client privilege or whether Husband waived the privilege").

Accordingly, we vacate the trial court's order that implicitly denied Plaintiffs' motion to compel. Additionally, we remand with instructions for the court to enter an appropriate order on whether Defendants waived the attorney-client privilege by including the partially-redacted emails in support of their motion to enforce the settlement agreement.

## B.  The Parties' "Settlement Agreement"

Next, we move to the trial court's actions granting the motion to enforce the settlement agreement and the resulting dismissal of the case.  "A settlement agreement made during the course of litigation is a contract between the parties, and as such, contract law governs disputes concerning the formation, construction, and enforceability of the settlement agreement."  *Waddle v. Elrod*, 367 S.W.3d 217, 222 (Tenn. 2012).  "It is well established in [Tennessee] that a contract can be expressed, implied, written, or oral, but an enforceable contract must, among other elements, result from a meeting of the minds and must be sufficiently definite to be enforced."  *In re Estate of Haskins*, 224 S.W.3d 675, 678 (Tenn. Ct. App. 2006) (quoting *Jamestowne on Signal, Inc. v. First Fed. Sav. & Loan Ass'n*, 807 S.W.2d 559, 564 (Tenn. Ct. App. 1990)).  When negotiating a potential settlement agreement, "an attorney cannot surrender substantial rights of a client, including an agreement to dismiss the litigation thereby permanently barring a client from pursuing his claim, without the express authority of the client."  *Borena v. Yellow Cab, Metro, Inc.*, 342 S.W.3d 506, 509 (Tenn. Ct. App. 2010) (quoting *Austin Powder Co. v. Thompson*, No. 03A01-9507-CV-00225, 1996 WL 73815, at *5 (Tenn. Ct. App. Feb. 20, 1996)).

In the trial court's written order granting Defendants' motion to enforce the settlement agreement, the court stated that the motion was granted "[f]or the reasons uttered by the Court after hearing on 17 September 2019," without providing detailed reasoning for its decision.[4]  Even if we consider the statements made by the trial court after its hearing on September 17, 2019, from our review of the transcript, the court's final decision is unclear.  The trial court initially rendered an "oral ruling" at the conclusion of the hearing.  After the trial court began to explain its reasoning, counsel for both Plaintiffs and Defendants interjected to express their disagreement with the court's findings.  At that time, Mr. Brown, counsel for Defendants, stated that he would have a "different analysis" than the trial court.  In response, the trial court began an open discussion with the parties' attorneys.  This portion of the transcript depicts a back-and-forth discussion between the trial court and the litigants rather than an oral ruling by the trial court.  During this exchange, the court continued to consider arguments by the parties and then encouraged them to submit additional arguments in the form of briefs beyond the evidentiary hearing.  Based on the trial court's final comments that it was "taking the matter under advisement" and subsequent filings by the parties, it appears that the trial court did not render an oral ruling at the evidentiary hearing.  In conclusion, the court stated that it would render an opinion at a later date that "may be slightly different than the one that it[] uttered here in court."[5]

---

[4] For the reasons stated herein, it is not necessary to reach the issue of whether this language was sufficient to incorporate the transcript of the proceedings by reference.  Accordingly, we express no opinion on this issue.

[5] Subsequent portions of the record further indicate that the trial court did not render a final decision on Defendants' motion at the evidentiary hearing on September 17, 2019.  On February 11, 2020, after a

Additionally, the trial court did not appear to resolve several critical issues related to the alleged settlement agreement, such as whether Mr. Jendrek had authority to settle the case on behalf of Plaintiffs and, if so, whether Ms. Dawson revoked that authority prior to the parties forming an agreement. *See Borena*, 342 S.W.3d at 509 (stating that "an attorney cannot [settle] substantial rights of a client" by agreeing to the dismissal of his or her claims "without the express authority of the client"); *Cam Int'l., L.P. v. Turner*, No. 01-A-01-9203CH00116, 1992 WL 74567, at *5 (Tenn. Ct. App. Apr. 15, 1992) (stating that "trial courts are better suited to develop facts, to weigh the evidence, and to resolve conflicts in the proof. [Appellate courts] are similarly ill-equipped to resolve disputes requiring the determination of the credibility of the witnesses"); *Sloan v. Hall*, 673 S.W.2d 548, 551 (Tenn. Ct. App. 1984) (stating that "[t]he scope and extent of an [attorney]'s real and apparent authority are questions to be determined by the trier of fact from all of the facts and circumstances in evidence").

Although the trial court's order on Defendants' motion did not provide any reasoning for its decision, its order on Plaintiffs' motion to alter or amend entered on September 15, 2020, clearly conveyed the trial court's conclusion that the parties reached a settlement agreement before Ms. Dawson sent her text message to Mr. Jendrek at 3:50 PM on July 14, 2017. Thus, it appears that the trial court granted Defendants' motion to enforce the settlement agreement based on this factual finding. Stated differently, the trial court apparently granted Defendants' motion after finding that the parties had already reached a settlement agreement before 3:50 PM on July 14, 2017. From our review, we are unable to agree with this conclusion.

Several uncontested facts indicate that the parties did *not* reach a settlement agreement before Ms. Dawson sent her text message at 3:50 PM on July 14, 2017. Copies of an email exchange between Mr. Jendrek and Mr. Brown indicate that, at 3:15 PM, Mr. Jendrek emailed Mr. Brown, stating that he believed Ms. Dawson "will go for a 'walkaway.'" According to Mr. Brown, Mr. Jendrek called him approximately one or two hours later—after the 3:50 PM text message—to reiterate the contents of the prior email. It was during this conversation that Mr. Brown supposedly inquired as to whether Plaintiffs were making an offer to settle. At the evidentiary hearing, Mr. Brown admitted that he informed Mr. Jendrek that he would recommend the "offer" to Defendants but, at that point on July 14, he did not yet have the authority to accept an offer. Two days after his telephone conversation with Mr. Jendrek, Mr. Brown emailed Defendants and their insurers to inquire whether they wished to accept Plaintiffs' "settlement offer." On July 17, 2017, Mr. Brown sent another email to Mr. Jendrek, stating that he communicated the proposal to Defendants but they had not yet indicated whether they wanted to accept the offer. Shortly thereafter,

conference call between the parties and the trial court, the court issued a memorandum opinion which stated that the motion to enforce the settlement agreement was still under advisement. Eight days later, on February 19, 2020, the trial court entered the written order that granted Defendants' motion.

Mr. Brown informed Mr. Jendrek that he had received Defendants' consent to accept the walkaway settlement offer. While the exact time of Defendants' consent is uncertain, it is clear from their own attorney's testimony that they did *not* accept any settlement offer prior to July 17, 2017. Taken together, the evidence preponderates against the trial court's finding that the parties formed a walkaway settlement agreement before 3:50 PM on July 14, 2017.[6] For these reasons, we must reverse the trial court's finding that the parties reached a walkaway settlement agreement before 3:50 PM on July 14, 2017.

Having reversed the trial court's stated reason for granting the motion to enforce the settlement agreement and dismissing the case, we recognize that there are many other outstanding issues and arguments that were raised in the trial court. Our review of these issues is stifled by the trial court's limited findings of facts and conclusions of law. The only clear and definitive ruling that we can discern from the record is the trial court's ruling that a settlement agreement was reached before 3:50 PM on July 14. We find no conclusive ruling by the trial court on any of the alternative arguments raised by the parties. Therefore, even after considering the trial court's "oral ruling," this Court is unable to discern any alternative ruling that would support the trial court's decision to grant Defendants' motion.[7]

At times, even when a trial court fails to make adequate findings of fact and conclusions of law, this Court "may 'soldier on' when the case involves only a clear legal issue, or when the court's decision is 'readily ascertainable.'" *Anil Const., Inc. v. McCollum*, No. W2013-01447-COA-R3-CV, 2014 WL 3928726, at *9 (Tenn. Ct. App. Aug. 7, 2014) (quoting *Hanson v. J.C. Hobbs Co.*, No. W2011-02523-COA-R3-CV, 2012 WL 5873582, at *10 (Tenn. Ct. App. Nov. 21, 2012)). However, that avenue is unavailable in this case because "we cannot determine whether the trial court's decision was the result of a mistake or whether the trial court, in light of the evidence before it, made findings not

---

[6] It appears that Defendants are also perplexed at the trial court's reasoning. During oral arguments before this Court, Mr. Brown—who continues to represent Defendants on appeal—could not explain how the trial court concluded that the case was settled before 3:50 PM on July 14, 2017. When asked what evidence the trial court relied upon to make this finding, Mr. Brown stated, "I don't know."

[7] In cases tried by the trial court, Tennessee Rule of Civil Procedure 52.01 states that "the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment." However, Defendants' motion to enforce the settlement agreement is not a Rule 41.02 or Rule 65.04(6) motion so as to require the trial court to make detailed findings of facts and conclusions of law under Rule 52.01. See Tenn. R. Civ. P. 52.01; *PNC Multifamily Capital Institutional Fund XXVI Ltd. P'ship v. Mabry*, 402 S.W.3d 654, 659-60 (Tenn. Ct. App. 2012) (stating that a "motion to enforce [a] settlement agreement is neither a Rule 41.02 [motion] nor a Rule 65.04(6) [motion] so as to require findings under Rule 52.01"). Although Rule 52.01 did not require the trial court to make specific findings of facts in this case, we emphasize that "it is most often a good idea for the court to include its findings in its order regardless of whether the lack thereof constitutes error." *See PNC Multifamily Capital Institutional Fund XXVI Ltd. P'ship*, 402 S.W.3d at 660. When a trial court clearly expresses "the reasons for its decision, [it] may well decrease the likelihood of an appeal." *Lovlace v. Copley*, 418 S.W.3d 1, 35 (Tenn. 2013) (citing *Hardin v. Hardin*, No. W2012-00273-COA-R3-CV, 2012 WL 6727533, at *5 (Tenn. Ct. App. Dec. 27, 2012)).

expressly stated in its oral ruling." *See Carson v. Waste Connections of Tenn., Inc.*, No. W2006-02019-COA-R3-CV, 2007 WL 1227470, at *7 (Tenn. Ct. App. Apr. 27, 2007). We are unable to resolve several issues in this case without a remand to the trial court. Therefore, remand is warranted under Tennessee Code Annotated section 27-3-128, which states:

> The [appellate] court shall . . . in all cases, where, in its opinion, complete justice cannot be had by reason of some defect in the record . . . remand the cause to the court below for further proceedings, with proper directions to effectuate the objects of the order, and upon such terms as may be deemed right.

Tenn. Code Ann. § 27-3-128 (2020); *see also John Allen Const., LLC v. Hancock*, No. W2004-02920-COA-R3-CV, 2006 WL 473732, at *6 (Tenn. Ct. App. Mar. 1, 2006) (stating that, under section 27-3-128, "an appellate court is permitted to remand the case for proper findings when the trial court has failed to make adequate findings necessary for the appellate court to make a just determination of the issues on appeal"). Therefore, we vacate the trial court's order on Defendants' motion to enforce the settlement agreement and remand the case to the trial court with instructions for the court to make explicit findings of fact and conclusions of law resolving the remaining issues from the evidentiary hearing.

## V.    CONCLUSION

For the reasons stated herein, the trial court's decision is affirmed in part, reversed in part, vacated in part, and remanded. Costs of this appeal are taxed equally to the appellants, The Estate of Stella Ruth Hughes, Hughes Living Trust, and Lynda Hughes Dawson, and the appellees, C. Ray Adams, Kevin Ewers, and Adams & Plucker, CPAs, PLLP, for which execution may issue if necessary.

_____
CARMA DENNIS MCGEE, JUDGE

- 11 -